KATHRYN ERICKSEN, Plaintiff and Appellant, v. BER-
GER O. ERICKSEN, Individually and as Executor of the
Estate of OSCAR F. W. ERICKSEN, also known as O.
F. W. Ericksen, Deceased, Defendant and Respondent.

No. 11357.
Submitted September 27, 1968. Decided December 3, 1968.
Rehearing denied, January 7, 1969.
448 P.2d 144.

Harris & Jackson, LaVerne V. Harris, (argued), Helena, Claude A. Johnson, Hamilton, for plaintiff and appellant.

Christian, McCurdy, Doyle, and Douglas D. Dasinger, (argued), Polson, for defendant and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the opinion of the court.

This is an appeal from a judgment entered in favor of the defendant, Berger Ericksen, by the district court of Jefferson County, the Honorable W. W. Lessley presiding without a jury.

Three actions are consolidated on this appeal. All involve the widow of Oscar Ericksen, Kathryn Ericksen, and Oscar Ericksen's son Berger Ericksen, who is also Kathryn Ericksen's stepson.

The facts of this case developed as follows. On or about July 15, 1957, Oscar Ericksen, age 88, had a heart attack in Whitehall, Montana. The defendant, Berger Ericksen, was notified at his home in Polson, Montana. He immediately went to Whitehall and assisted in moving his father to a local rest home. On this same day the defendant went to his father's home and began searching through his records and papers. Defendant contends that before this last illness his father had requested that a will be drawn up for him. Berger Ericksen went to see his lawyer, John Jardine, who drew up a will for Oscar Ericksen. The will was then taken to the rest home where it was read to the testator and duly executed. After Oscar Ericksen had signed the will, Berger Ericksen immediately left Whitehall and returned home to Polson. It should be noted that the will specifically excluded Kathryn Ericksen from sharing in the estate, all the property was left to Berger Ericksen and his three sisters. Oscar Ericksen died July 25, 1957 and Berger Ericksen, the named executor, requested John Jardine to begin probate proceedings on July 26, 1957.

Preceding his illness and death Oscar and Kathryn Ericksen

lived in a house which will be called for convenience the "home property". This house was in Oscar Ericksen's name and was valued at $2,000. Kathryn continued to live there. In September 1957 Berger Ericksen told the plaintiff that the house would be up for sale and it would be to her advantage to buy it. There is a great deal of conflict in the testimony as to whether Kathryn Ericksen was advised of her dower rights in the property. Regardless, she transferred fifty shares of Montana Power stock, value at $40 per share, for the title to the property. Berger Ericksen held on to the stock for a short time and then sold it for $2,050, which was turned over to the estate. The plaintiff in the first of the three above mentioned consolidated actions seeks to recover $683.33, her one-third interest in the house that she paid for.

The other two actions involved here have to do with a purported quit claim deed executed by the plaintiff in favor of the defendant which in part reads as follows:

"It is intended by this instrument to give unto the said grantee all right, title and interest I may have in and to the Estate of Oscar F. W. Erickson, also known, as O. F. W. Erickson, Deceased, and all property of said estate, whether real, personal, or mixed, save and except for property held in joint tenancy with full right of survivorship between said deceased and myself."

The real property deeded to defendant consisted of lots 11 and 12 of block 1 of Baker's Addition to the Town of Whitehall. This property was in the name of Oscar Ericksen, was valued at $7,000 and was being rented to the Woodward family. Under Montana's dower statutes Kathryn Ericksen would be entitled to one-third of this property.

The second action is based on an alleged confidential relationship that existed between plaintiff and defendant; plaintiff charging that Berger Ericksen, as executor of the estate, did not advise her of her rights and interest in the property before she was enticed into signing the deed. She seeks res-

toration of her dower interest in this real property and damages for withholding the dower.

The third action based on the same document, seeks to set aside the quit claim deed as it applies to plaintiff's waiver of her statutory right to a one-third interest in the personal property left by Oscar Ericksen.

Within a year after the authentication of the will, the plaintiff filed a renunciation of the will as provided in section 22-108, R.C.M. 1947. Defendant contends that the renunciation is meaningless because of the two transactions entered into by the plaintiff.

The lower court found in favor of the defendant, stating that the plaintiff executed the quit claim deed freely and voluntarily without any fraud, duress, or misrepresentation; was advised of her rights to renounce under the will; had full knowledge of the contents of the will; was aware of the fact that she could receive an additional amount of money if she promptly renounced her right to take under the will; knew of her rights in the estate as a widow; and, that there was not trust or confidential relationship between the two parties.

By the authority given us by section 93-216, R.C.M. 1947, it is our duty to review the findings of fact and conclusions of law as determined by the lower court and determine if there is sufficient evidence to support such findings and conclusions. Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Kasala v. Kalispell Pee Wee Baseball League, 151 Mont. 109, 439 P.2d 65.

The personalities in this instance should be considered. The plaintiff, Kathryn Ericksen, at the time of trial was 74 years old. At the time of her husband's death she was 65. Her education ceased at the seventh grade. She had no legal or business experience and her understanding of the same was negligible. The only employment she had ever understaken was babysitting and house cleaning. She had lived continuously with her husband since their marriage in 1936; there was no evidence pre-

sented that their relationship was anything but pleasant. Berger Ericksen, on the other hand, was 52 at the time the above described proceedings took place. He undoubtedly is a shrewd business man and not a stranger to current business practices, evidenced by the fact that he retired at the ripe age of 33 and since then has been living at his home on Flathead Lake. He owns a business in Butte, construction equipment, a boat, and a summer home on Flathead with 200 feet of lake frontage, all free of any indebtedness.

The district court found as a fact that the will was drafted at the direction of the deceased and that he was aware of the contents of the document. The evidence does not satisfactorily show that such was the case. Only Berger Ericksen testified that his father had requested him to draw up a will on several previous occasions. The time, circumstances, and terms of the will are in themselves unusual; it was made when Oscar Ericksen was on his death bed, the decedent's previous request for his son to get a will drafted were never fulfilled by Berger Ericksen, Oscar Ericksen had just suffered a heart attack and was in the process of being moved to the rest home, Oscar may not have been mentally alert at this time, and the will provided for his son and daughters but specifically excluded his wife of 21 years. It is interesting to note that it took no longer than three-quarters of an hour to draw up the will. Berger Ericksen testified that his father read the will, he read the will to his father, and that Jardine read and explained the legal meaning of its provisions to Oscar Ericksen. Jardine testified that Oscar Ericksen did not read the will but it was read to him and "he appeared to" understand it. We find there was not sufficient evidence introduced to sustain the finding that the will was made at the decedent's direction and that he understood the meaning of the will. No reason was given for his exclusion of his wife except that she was to take all the property they held in joint

tenancy. It appears that Berger Ericksen supplemented his wishes rather than those of his father to Jardine.

The most difficult question presented us is: Did the plaintiff freely, knowingly, and voluntarily grant all her interest in the real property involved in the quit claim deed to Berger Ericksen? Was she advised of her rights? Would this be the normal practice for a woman of her age, intelligence, and financial standing to do? We cannot believe that she would.

In considering the "home property", we find that Berger Ericksen, as executor, told Kathryn Ericksen he was closing out the estate and it would be necessary to sell the house in which the plaintiff was living. There is a conflict in testimony as to whether Kathryn Ericksen was ever advised of her interest in this particular property; Berger Ericksen stated that he advised her she had an interest in the "whole estate"—this was done before Oscar Ericksen made his will. Nevertheless, Kathryn Ericksen transferred 50 of her 100 shares of Montana Power stock to Berger Ericksen in exchange for the "home property"; property she had one-third interest in as dower right. We doubt that Kathryn Ericksen would have paid for something she already owned. She certainly would not have if she had been accurately advised of her interest and rights in the property.

A quit claim deed was delivered to Kathryn Ericksen on November 25, 1957. The plaintiff signed this instrument conveying to Berger Ericksen all of Kathryn Ericksen's dower interest in the "Woodward Property" i. e. lots 11 and 12 of block 1 of the Baker's Addition. There was a house on these lots that was rented to the Woodwards. This deed also gave to Berger Ericksen all of Kathryn Ericksen's interest in the personal property that was left by her husband. The value of the house was approximately $7,000. The house was sold and the proceeds became part of the estate's personal property—increasing the value of the personal property to $15,984. Again the question for us to consider is whether Kathryn Erick-

sen was advised of her interest in this property. We find that at the time this quit claim deed was signed, Kathryn Ericksen did not fully understand the meaning of her dower right, homestead right, or her right to reside on her husband's property. It is beyond our comprehension how any person, especially Mrs. Ericksen, could freely relinquish her interest in personal and real property if she had been properly advised of her rights and privileges. It is especially strange since the estate, through Berger Ericksen as executor, received the benefits of these transactions without detriment. There was no evidence introduced which specifically affirmed the defendant's position that the plaintiff was advised of all her rights; all the testimony was conjecture on the part of Berger Ericksen and John Jardine. Consequently, to be consistent with our prior decisions, we must hold that the evidence presented does not substantiate the findings of fact and conclusions of law of the lower court.

To reiterate, considering all of the evidence—specifically: Kathryn Ericksen did not know of her rights; all heirs except Kathryn Ericksen received a cash distribution from the estate; all advice and information was given to the plaintiff either by Berger Ericksen or John Jardine; the hesitancy in signing the quit claim deed; and, her alleged understanding of the terms of her husband's will—indicates that the plaintiff did not receive what was due her. We do not find it necessary to determine if Mrs. Ericksen's misfortune was a result of fraud, misrepresentation, or a breach of a confidential relationship; it is sufficient to say that the evidence before us does not lead us to the same conclusion as that of the lower court.

The judgment of the district court is reversed and it is ordered that Kathryn Ericksen be compensated by Berger Ericksen, as executor of the estate of Oscar F. W. Ericksen, as follows, with interest at the statutory rate from the date of her husband's death. The values and dates are:

1. Value of one-third of Montana Power stock (total value $2,050) from October 16, 1957 ....$ 683.33.
2. Value of one-third interest in ''Woodward'' property (total value $6,875) from Nov. 25, 1957 ............................................................................$2,291.66.
3. Value of one-third interest in personal property dated from Nov. 25, 1957 ..............................$2,353.24.

This cause is remanded to the district court with directions to enter a judgment in conformity with this opinion. Plaintiff is entitled to reasonable costs incurred during the course of these actions.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and CASTLES concur.

MR. JUSTICE HASWELL, deeming himself disqualified, did not take part in this cause.