RICHARD C. TIMMERMAN, JOHN A. RUMMEL, RICHARD J. MUNRO ET AL., PLAINTIFFS AND RESPONDENTS, *v.* OWEN F. GABRIEL AND AUDREY M. GABRIEL, DEFENDANTS AND APPELLANTS.

No. 11807.
Submitted May 13, 1970.
Decided June 12, 1970.
470 P.2d 528.

Erickson & Erickson, Leif B. Erickson, argued, Helena, for appellants.

Loble, Picotte & Loble, Lester H. Loble, argued, Helena, for respondents.

MR. JUSTICE JOHN CONWAY HARRISON delivered the Opinion of the Court.

Defendants, husband and wife, appeal from a mandatory injunction issued to enforce restrictive covenants against them by the Hon. Victor H. Fall, District Judge, sitting without a jury in the first judicial district, Lewis and Clark county.

In the spring of 1965, Owen F. Gabriel and his wife, Audrey M. Gabriel, defendants herein, purchased 2 lots in the Helena Valley Estates Subdivision. These lots were sold to them by Lloyd Snyness, a realtor, at a cost of approximately $1,300. Restrictive covenants affecting the type of building that could be placed on the land were on file in the Lewis and Clark county clerk & recorder's office and indexed on the plat of the Helena Valley Estates Subdivision. There was no evidence that the Gabriels inspected the plat or the filed covenants, but Lloyd Synness insists he told them the land was covered by restrictive covenants and that trailers were prohibited.

The applicable restrictive covenants state as follows:

Covenant No. 2:

"Said lot or lots shall be improved only by the erection of a one-family dwelling house constructed of new materials * * *."

Covenant No. 3:

"No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other out building shall be used on

any lot at any time, as a residence, either temporarily or permanently, nor shall any residential structure be occupied for residential purposes until completely finished."

The Gabriels purchased a dwelling referred to in the industry as a "double wide mobile home" This mobile home was purchased from Gold Star Homes, a Helena trailer and mobile home sales outlet. The mobile home was composed of 2 structures each 10 feet wide and 50 feet long; each was built similar to a typical trailer house in several respects. Each section had a steel frame underneath with springs, axles, wheels and a drawbar and covered with metal siding. When bolted together the 2 structures formed a house 20 feet wide and 50 feet long with 1,000 square feet of floor space. The cost of this mobile home was approximately $13,500.

. The 2 sections were hauled to the Gabriel lots in the Helena Valley Estates Subdivision, placed on a concrete block foundation and bolted together. The wheels, springs, axles and drawbars were removed and returned to the factory. A roof cap was put on the home and trim placed on the interior. A septic tank, propane tank, and power line were connected to the house. A water system from a well drilled on the site was attached to the house. Various trees were planted and some landscaping was done.

The neighbors whose homes are all in the range of $28,000 to $40,000 immediately raised strenuous objections. The realty agency that sold the lots to the Gabriels was notified and a representative of that firm contacted the Gabriels and informed them they would have to remove the mobile home because there were "restrictions" on the property. Gabriel referred him to his lawyer. American Building & Loan Association, the principal mortgagee of the properties in the Helena Valley Estates Subdivision, refused to mortgage any more homes in the subdivision until the mobile home was removed.

After living in the home a short time the Gabriels moved because Mrs. Gabriel was disturbed by the unfriendliness of her

neighbors. The house was rented for a period of time. The landscaping deteriorated and the trees died.

Plaintiffs, a group of landowners in the covenanted area, brought suit in the district court of the first judicial district and obtained a mandatory injunction requiring the removal of the mobile home The court's conclusions of law were in part as follows:

"1. The Defendants did not 'erect a one-family dwelling house' as required by Covenant No. 2, but moved a trailer upon their lot which was neither 'erected' nor a 'house' as required by Covenant No. 2.

"2. The Defendants violated Covenant No. 3, which prohibits the use of a 'trailer' upon 'any lot at any time, as a residence' by moving a trailer upon said Lot 40 of the Helena Valley Estates Subdivision and using it as a residence."

Three issues are raised on appeal. Two deal with whether or not the structure placed on the Gabriels' property was "erected" and is a "house". It is the Gabriels' position that under the terms of the covenant the building placed on their property is a house and that it was erected on the property.

Accepting defendants' definition of a house as "a structure intended or used for human habitation: a building that serves as one's residence", we still are faced with the controlling issue of whether or not a structure of this type violates the restrictive covenants.

In the case of Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364, we find a fact situation nearly on all fours to the instant case. In that case a mobile home was trucked to the site, the wheels removed, placed on a cement foundation, connected with water, electricity, and a septic tank. The restrictive covenant referred to said: "No garage, trailer, shack or hut shall be used for living purposes." The Iowa court found that despite the removal of the wheels and the installation of utilities the trailer retained its "basic characteristic of 'being designed to be

hauled' ''. To the same effect see Swigert v. Richards, Ohio ComPl., 87 Ohio Law Abst. 37, 178 N.E.2d 109.

The third and most important issue is whether the structure here involved is a trailer, forbidden by the provisions of Covenant No. 3. The construction of covenants in deeds to property is not unlike the construction of contracts.

Section 13-710, R.C.M.1947, provides:

''The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.''

The word to be construed here is ''trailer''. The house the Gabriels placed on their property is very similar to the typical trailer house. It has metal siding, a metal frame to which is attached springs, axles, wheels and drawbars. The fact that some of these features may be removed, and were removed in the instant case, does not change the basic structure of the house itself. The structure was sold to the Gabriels by a trailer sales firm while it was on their sales lot, mounted on wheels. It was later pulled to the Gabriels' lots by a tractor truck. The term mobile home is an advertising euphemism for a large house trailer and although the larger models of mobile homes are considerably less mobile than the smaller models, they are essentially similar in structure and appearance. It cannot be demonstrated that they are so essentially unlike a trailer as to exclude them from the general definition of ''trailer''.

Defendants cite cases holding that the placing of a trailer on a foundation and connecting it with water, sewer, and other utilities removes its portable characteristics and makes it a permanent house, not a trailer. These cases deal with the transient nature of a trailer which is greatly reduced by mounting it on a foundation. However, the restrictive covenant being construed here is directed to a type of structure such as a trailer, basement, tent, shack, garage, barn or other outbuilding, and

the prohibition extends to the use of those types of structures as dwellings because of the nature of their construction rather than their mobility.

Under section 93-216, R.C.M.1947, it is the duty of this Court to review the findings of fact and conclusions of law of the trial court and to determine if there is sufficient evidence to support such findings and conclusions. Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Erickson v. Erickson, 152 Montana 179, 448 P.2d 144.

Here, we find sufficient evidence to support the trial court's findings of fact and conclusions of law that the restrictive covenants imposed on the land in question were violated.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and DALY, concur.