BROWNFIELD SUBDIVISION, INC. *et al.*, Plaintiffs-Appellees, *v.* REX McKEE *et al.*, Defendants-Appellants.

(No. 11998; ▮▮▮▮▮▮▮▮▮▮▮

Fourth District—May 2, 1974.

*Rehearing denied June 6, 1974.*

TRAPP, J., dissenting.

Ralph T. Stenger, of Belleville, for appellants.

Donald M. Tennant and Richard M. Joy, both of Champaign, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Plaintiffs sought a mandatory injunction prohibiting defendants from occupying what they claimed was a mobile home and for its removal from the Subdivision. The basis for the action was the following restrictive covenant:

> "No building shall be erected on any lot except a one family dwelling house, a garage and one service building and used exclusively as such. Buildings shall be permanent structures of an attractive design. Duplexes may be built on Lots 34, 35, 36, 37 and 38.
>
> No structure of a temporary character, trailer, basement, tent, shack, mobile home or garage shall be used on any lot, at any time, as a residence, either temporarily or permanently."

After a hearing, the court found that the structure erected by the de-

fendants was a "mobile home" within the meaning of the restrictive covenant and enjoined its further use as a residence. Defendants appeal.

Is or is not what defendants erected a "mobile home"? This is the central issue of this appeal. To be sure, some side issues are raised relative to the grant of a new trial, but the principal thrust is for outright reversal, that is, that we should rule as a matter of law, that that which defendants erected on the lot they purchased in this subdivision does not fall within the ban of the covenant just quoted. Defendants argue that their home is a "sectional" home or a "modular" home, not a "mobile home". Resolution requires a recital of the evidence.

Initially, with regard to the subdivision itself, there are approximately 66 lots, most being restricted to single-family dwellings. Exhibits of plaintiffs' evidence that homes presently existing are of a conventional type— all the way from single-story ranch type to split-levels and two-story homes. Defendants' structure is in part composed of an "Armor Home"— a trade name—and its dimensions are 52' x 24'. It is known in the trade as "double wide". Altogether there are 1,460 square feet. This includes a family room added by defendants which is connected to the Armor Home—and a two-car garage. In the Armor Home there are three bedrooms, a living room, 24' x 15', with paneled walls, bay windows and full carpet, and adjacent to the living room is a modern kitchen and dining area, plus a utility room and two baths. Outside there is a concrete patio and driveway. The outside is of light aluminum and the roof runs completely across the family room and a portion of the Armor Home. Apart from the family room and garage, the home rests on three I beams which are mortised into the foundation. The Armor Home comes equipped with detachable hitches and running gear. It was pulled in place by a truck, the running gear removed and in doing so, the undercarriage, springs, axles, wheels and everything under the frame goes too. The family room is 14' x 22', the garage 18' x 24', the patio 14' x 10', and the concrete driveway is approximately 35 feet long. Being "double-wide", the Armor Home had two sections, and each was pulled separately to the lot. There is a concrete block foundation completely laid around the lower portion of the structure. The vendor of this structure designated it a "Mobile Home". Pictures of defendants' home are in evidence, as we have said, and by agreement of the parties, the court viewed the premises. He found the structure to be "neat and attractive" and also that it was indeed a "mobile home" within the meaning of the covenant.

> "The use of the term 'mobile home' is a generic term applied to a certain type of structure and is not intended to be taken in its most technical sense, by breaking it into two rigidly defined words. Both the view of the premises, which the parties agreed should

be a portion of the evidence, and the photographs leave no doubt as to the type of structure on Lot 65, however neat and attractive it has been made."

To us the covenant is clear—mobile homes are excluded and the term mobile home is not elusive of meaning, or otherwise vague, or ambiguous. Hence, we need not concern ourselves with the rule of construction which says that if there is doubt we should lean away from any restrictions on use. Mobile homes are different from conventional homes. This difference is the basis for the restriction. The restriction's validity is not before us—hence we need not be detained in analyzing whether this difference is meaningful in the sense of furnishing a reasonable classification for particular treatment. Thus, assuming validity of the covenant, that is, that it can be enforced, we must decide whether the court below was correct in coming to the conclusion that it did that defendants' structure was a mobile home. We agree with the court below, whether we call it a generic term or not, that it is descriptive enough of a given type of dwelling that adequate criteria are bound up in the term itself as to which we can ascribe a reasonable meaning.

When we say that mobile homes are different from conventional dwellings, we have to be specific. It would be easy enough to affirm by simply saying that the evidence was not against the manifest weight of the evidence based on the pictures in the record that we ourselves can view, and by giving full credence to the court's belief that what it saw on the view of the premises was indeed a mobile home. But we would be shirking our duty to do so and to simply affirm by saying that a mobile home is that which looks like a mobile home, defining a thing in its own terms has obvious drawbacks.

■■ The crux is in design. It is not so much that it is moveable but that it was designed to be moved. It is not so much what kind of a foundation it might have—here we can assume that it is permanent—but that it was designed without a permanent foundation. Logically, therefore, we can say that a mobile home is a structure which is designed to be moved and has no foundation or the need for one. In 54 Am.Jur. 2d 472, Mobile Homes, Trailer Parks, and Tourist Camps, section 1 (1971), we read:

"According to the Mobilehome Dealers National Association, a mobile home may be defined as a moveable or portable dwelling built on a chassis, connected to utilities, designed without a permanent foundation, and intended for year-around living, * * *."

In *Manchester v. Phillips*, 343 Mass. 591, 592, 180 N.E.2d 333, a zoning ordinance read:

"The word dwelling shall mean a building or a portion thereof, either designed or used as living quarters, but shall not include an overnight camp, trailer, or mobile home."

There the mobile home was 25 feet wide and 51 feet long and was placed on a concrete foundation. The owner proposed various improvements such as a canopy and a veranda, plus some landscaping and brick steps, but was prevented from doing so by an injunction. In describing this dwelling, the court said:

"Pictures show what is unmistakably the super-structure of a partially metal mobile unit, situated in an area in which there are modest but neat conventional frame houses. A pencil sketch showed this unit as to be somewhat disguised by the canopy, the planting of some shrubs, and the laying out of low privet hedges." (343 Mass. at 593.)

In *Manchester*, and as we do here, the characterization "mobile home" was given an ordinary meaning, the court concluding:

"* * * In ordinary parlance the unit shown in the exhibits will be spoken of as a trailer or a mobile home, even if it has not been sold with wheels or its wheels have been taken away, and even if it has been affixed to the land. It looks like a trailer, has the qualities of a trailer superstructure, and has been built as a trailer. There is no such ambiguity about the language of the by-law as to lead us to interpret it strictly against the public interest because it will operate in derogation of the landowner's ability at common law to make unrestrained use of his property." (343 Mass. at 596).

The structure we deal with here is somewhat different—it is "double wide". But width itself, does not argue against it being a mobile home, if it was designed without a foundation, and if it was built as a moveable dwelling to fit on a chassis, because it then falls within the definition given to us from 54 Am.Jur. 2d. ·

Analogous is *Jones v. Beiber*, 251 Iowa 969, 972, 103 N.E.2d 364, and while the court was not concerned with the definition of the term "mobile home", as such, but rather with "trailer", its reasoning is helpful. There the covenant read that, "no garage, trailer, shack, or hut shall be used for living purposes." Defendant's trailer was 50' x 8'. As here, the wheels were removed and it was placed on a foundation. We quote:

"Due regard must be had for the purpose contemplated by the parties thereto, and words used must be given their ordinary and obvious meanings as commonly understood at the time the instrument was executed, unless they have acquired a particular meaning in the particular relationship in which they appear, or in re-

spect to the particular subject matter involved, or unless it clearly appears in the context that the parties intended to use them in a different sense."

As in this case, the argument was made that once the wheels were removed, the trailer was no longer a trailer—to put it simply. The court held otherwise.

■■ Pertinent in our context is the case of *Wright v. Michaud*, 160 Maine 164, 174, 200 A.2d 543. Up for consideration was the constitutionality of an act which stated that no trailer or mobile home would be allowed in a certain zone, and that they would not constitute a single family residence use whether on a foundation or not. In answer, the court stated:

"Today the modern mobilehome is equipped with all the modern necessities and conveniences of comfortable living, compressed into an area of sufficient size to meet the needs of an increasing number of people. Such a structure, however elaborately it may be constructed or equipped, does not lose its appearance as a mobile home by becoming affixed to the realty."

*Timmerman v. Gabriel*, 155 Mont. 294, 295, 470 P.2d 528, is more to the point here as a "double-wide" mobile home was involved. The covenant in this case read:

" 'Said lot or lots shall be improved only by the erection of a one-family dwelling house constructed of new materials  *  *  *.

\*  \*  \*

No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other outbuilding shall be used on any lot at any time as a residency either temporarily or permanently, nor shall any residential structure be occupied for residential purposes until completely finished.' "

When the two halves were combined, the structure was 50' x 20'. As here, each had a steel frame underneath with wheels and was pulled to the foundation on which it rested. The utilities were hooked up, trim placed on the exterior, and landscaping effected. We quote:

"The house the Gabriels placed on their property is very similar to the typical trailer house. It has metal siding, a metal frame to which it attaches springs, axles, wheels, and draw bars. The fact that some of these features may be removed, and were removed in the instant case, does not change the basic structure of the house itself. The structure was sold to the Gabriels by a trailer sales firm while it was on their sales lot, mounted on wheels. It was later pulled to the Gabriels' lot by a tractor-truck. The term mobile home is an advertising euphemism for a large house trailer

and although the larger models of mobile homes are considerably less mobile than the small models, they are essentially similar in structure and appearance. It cannot be demonstrated that they are not essentially unlike a trailer as to exclude them from the general definition of 'trailer.'

\* \* \* However, the restrictive covenant being construed here is directed to a type of structure such as a trailer, basement, tent, shack, garage, barn or other outbuilding and the prohibition extends to the use of those type of structures as dwellings because of the nature of their construction rather than their mobility." (155 Mont. at 298.)

■■ In essence, we come down to this, once a mobile home, always a mobile home. That this "double-wide" started off as a mobile home is not in doubt. One of defendants' witnesses described it as "two mobile homes so constructed to fit together to make the mobile home larger." Having started life as a mobile home, lack of mobility created by the user does not render it not a mobile home. "Mobile" and "home" have to be read together—not separately, as the court below pointed out. Mobility, then, or to use the better word in this context, portability, is not germane, that is, when portability is removed—let us assume permanently—from a mobile home by securely anchoring it to a foundation and to other structures, it still remains a mobile home. We conclude that the injunction below was properly issued, that defendants were in violation of the covenant, and therefore the decree appealed from is affirmed.

Affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The judgment of the trial court should be reversed.

In a confusion of business nomenclature, statutory regulation and formal security arrangements, the issue should be examined in the light of the nature and quality of the structure as it existed at the time the complaint was filed.

A mobile home is defined in Ill. Rev. Stat. 1973, ch. 111½, par. 712.1 as:

" 'Mobile home' means a structure designed for permanent habitation and so constructed as to permit its transport on wheels, temporarily or permanently attached to its frame, from the place of its construction to the location, or subsequent locations, at which it is intended to be a permanent habitation and designed to permit the occupancy thereof as a dwelling place for 1 or more

persons, provided that any such structure resting on a permanent foundation, with wheels, tongue and hitch permanently removed, shall not be construed as a 'mobile home'."

Paragraph 724 requires that a mobile home display a certificate of title on the vehicle as required in Ill. Rev. Stat. 1973, ch. 95½, par. 3—120. The vehicle described in the latter statute is defined as a "house trailer". In paragraph 1—128 of the same chapter, a house trailer is defined as a recreational trailer equipped or used for living quarters.

It appears proper to conclude that the statute contemplates both a degree of highway use and that the unit so registered is essentially an entity self-sustaining and providing living accommodations in itself.

As in the statute, the courts have equated or held synonymous the terms trailer, house trailer and mobile homes and have described such as being designed as a highway vehicle. See cases cited, 96 A.L.R.2d 234.

The record is clear that defendant purchased the building in two sections, each of which was transported separately and neither alone was capable of providing living accommodations within the statutory context of a "house trailer" or mobile home.

So far as this record shows, the completed structure complies with the zoning and building codes of the municipality. It appears that the walls have studding of the usual dimensions and spacing, that the completed structure has a pitched roof covered with asphalt shingles purchased by defendant to complete the building. The owner was required to purchase aluminum siding to cover the 24 foot ends created when the two sections were joined together. The affixing of such siding would necessarily combine the two sections into a single entity.

The record shows that in terms of construction, the building was a house built in two sections, albeit sold and delivered as personal property. While the respective sections were delivered by towing, the wheels and supporting rigging were not a part of the delivered units, but belonged to and were returned to the manufacturer. The fact that the structure was delivered on a series of wheels does not determine its nature. The testimony is that it was equally feasible to deliver such upon a low-boy trailer. The owner purchased and affixed to the footings and foundation three structural 'T' beams onto which the sections were lowered and affixed. Such beams were mortared into the foundation. The structure had no capability as a highway vehicle.

Within the context of *Town of Manchester v. Phillips*, 343 Mass. 591, 180 N.E.2d 333, the structure was not built as a trailer or self-contained unit and was not built upon a chassis. Even if one disregards the added portions of the building which were built on site, there are no characteristics of a trailer or mobile home. It constrains credibility to conclude

that upon completion the building was either structurally or legally a mobile home.

Neither the fact that the structure was sold by a dealer in conventional mobile homes, nor that it could, in theory, again be separated into two sections, should be determinative of the nature of the structure as finally completed.