Ray E. FARNAM and Myrtle G. Farnam, Ron L. Brown and Connie K. Brown, Virgil L. Richards and Sandra J. Richards, James E. Kendall and Irene E. Kendall, Byron L. Schultz and Barbara L. Schultz, Gary R. Sessions and Mary Lou Sessions, Ken Steiner and Lujean Steiner, John Harty and Maxine Harty, Plaintiffs and Appellees,

v.

Paul E. EVANS and Ethel D. Evans, Defendants and Appellants.

No. 13219.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1981.

Decided June 3, 1981.

George Beal, Rapid City, for plaintiffs and appellees.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

DUNN, Justice.

This is an appeal from a summary judgment that found Paul E. and Ethel D. Evans' (appellants) dwelling to be a mobile home, thereby violating a restrictive covenant that precluded mobile homes in a subdivision, and ordered the issuance of a mandatory injunction to require appellants to remove the dwelling. Appellees constitute the other landowners in this subdivision. We affirm.

The facts of this case present the following issue: Whether a dwelling that is pre-constructed in two separate components, each fourteen feet wide and seventy feet long, on its own metal chassis, which is delivered by attaching wheels and a trailer hitch to the chassis and towed, and which is accompanied by voluminous documentations of ownership and warranties that refer to it as a mobile home and state that it is in

compliance with state and federal laws concerning mobile homes, constitutes a mobile home. We hold that it does.

In November of 1979 appellants purchased a lot in the Rolling Hills Subdivision. This is a development situated approximately seven miles west of Rapid City, South Dakota. The land contained in this subdivision is subject to several restrictive covenants which run with the land. Appellants purchased their lot with full knowledge of these covenants. Paragraph 3 of the covenants provides, in part:

> No basement, tent, shack, barn, garage or other outbuilding erected on any lot, shall at any time be used as a temporary or permanent residence, nor shall any structure of a temporary character be used as a residence. Modular, summertype A-frame or cabins, pre-cut or prebuilt may be constructed on any lot. No trailer or mobile home shall be used as a permanent residence, nor shall any other structure of a temporary nature be used as a residence.

In spite of the presence of this covenant, which specifically excluded mobile homes, appellants purchased a structure from Western Homes of Rapid City, had it towed onto this lot, and now seek to fit it within the covenant language as a modular home. After a review of all depositions and briefs of the parties, the trial court granted a summary judgment in favor of appellees and issued a mandatory injunction requiring removal of appellants' dwelling.

The structure in question is a twenty-eight foot by seventy-foot dwelling. It was built (at the manufacturer's factory) to be movable in two separate components. The manufacturer's certificate of origin describes this dwelling as a mobile home. The purchase agreement that appellants signed refers to it as a mobile home. Each of the two separate components has a customer registration form, which refers to it as a mobile home. Each of the two components, has a tag on it, stating that it is in compliance with federal mobile home construction and safety standards. The dwelling is constructed upon a steel frame and chassis.

The two components can be unbolted, the wheels reattached to the individual components, a towing hitch reattached, and the two separate components may then be moved. To tow the unit, no special equipment is needed other than a towing vehicle, the wheels, and a towing hitch. Nevertheless, appellants claim that it is a double-wide multi-sectional manufactured home; that it has been placed upon blocks; that the apparatus needed to move it, to-wit wheels and tow hitch, have been removed; and therefore it is not a mobile home.

We agree that in its present state the dwelling is incapable of easy movement; however, we do not find that this temporary hiatus of mobility has in any way transformed a double-wide mobile home into anything but a double-wide mobile home.

SDCL 34–34A–1 defines a mobile home as follows:

> Terms used in this chapter, unless the context otherwise requires, mean:
> (1) "Mobile home," a movable or portable unit, designed and constructed to be towed on its own chassis (comprised of frame and wheels), and designed to be connected to utilities for year-round occupancy. The term shall include:
> > (a) units containing parts that may be folded, collapsed, or telescoped when being towed and that may be expanded to provide additional cubic capacity; and
> > (b) units composed of two or more separately towable components designed to be joined into one integral unit capable of being separated again into the components for repeated towing.
> The term shall include units designed to be used for residential, commercial, educational or industrial purposes, excluding however, recreational vehicles, as defined in this chapter[.]

Appellants' dwelling falls within this definition. It is designed to be towed on its own chassis and frame. It is composed of two separate towable components, which are designed to be joined into one integral unit

and can be separated again for repeated towing. Finally, it is designed to be connected to utilities and occupied year round. Their dwelling falls within the statutory definition of mobile homes.

█ Appellants' allege that the removal of the apparatus needed for movement, such as the wheels and towing hitch, and the placing of the dwelling upon concrete blocks and pads changes the classification of a mobile home. We conclude that it does not.

This argument has been advanced in many other jurisdictions. The substantial weight of authority has held that merely removing the means of ready mobility does not change the dwelling from being classified as a mobile home. *DeLaurentis v. Vainio,* 169 Mont. 520, 549 P.2d 461 (1976); *Timmerman v. Gabriel,* 155 Mont. 294, 470 P.2d 528 (1970); *Bullock v. Kattner,* 502 S.W.2d 828 (Tex.Civ.App.1973); *Smith v. Bowers,* 463 S.W.2d 222 (Tex.Civ.App.1970).

In our view, the reasons for such decisions are best stated in *Brownfield Subdivision, Inc. v. McKee,* 19 Ill.App.3d 374, 311 N.E.2d 194 (1974), aff'd 61 Ill.2d 168, 334 N.E.2d 131 (1975). Therein the Illinois Appellate Court stated:

> The crux is in design. It is not so much that it is moveable but that it was designed to be moved. It is not so much what kind of a foundation it might have . . . but that it was designed without a permanent foundation. Logically, therefore, we can say that a mobile home is a structure which is designed to be moved and has no foundation or the need for one. In 54 Am.Jur.2d 472, Mobile Homes, Trailer Parks, and Tourist Camps, section 1, we read:
>
> > "According to the Mobilehome Dealers National Association, a mobile home may be defined as a moveable or portable dwelling built on a chassis, connected to utilities, designed without a permanent foundation, and intended for year around living, * * *."

19 Ill.App.3d at 376, 311 N.E.2d at 196. The Illinois Appellate Court then concluded that:

> In essence, we come down to this, once a mobile home, always a mobile home. . . . Having started life as a mobile home, lack of mobility created by the user does not render it not a mobile home. "Mobile" and "home" have to be read together—not separately, as the court below pointed out. Mobility, then, or to use the better word in this context, portability, is not germane, that is, when portability is removed—let us assume permanently—from a mobile home by securely anchoring it to a foundation and to other structures, it still remains a mobile home.

19 Ill.App.3d at 379, 311 N.E.2d at 198.

The same result is mandated here. Unlike a modular home, appellants' dwelling was designed without a permanent foundation and is totally capable of being used without any modifications or the addition of an underlying foundation. The exhibits, photographs of appellants' dwelling, affidavits, and depositions leads to one conclusion—this is a mobile home.

█ Appellants also attempt to raise as an issue that the language of paragraph 3 is ambiguous and therefore should be construed against the scrivener. We could speculate on the wisdom of a zoning restriction permitting a modular home and precluding a pair of mobile homes which form into a modular-type home, but the reasons for the covenant are not before us. The covenant clearly permits modular homes and forbids mobile homes.

Accordingly, the summary judgment for mandatory injunction is affirmed.

All the Justices concur.