BROEDER *v.* SUCHER BROTHERS, INC.

1. COVENANTS—STRICT CONSTRUCTION.

Generally, covenants restricting the use of land are construed strictly against grantors and others claiming the right of enforcement, all doubts being resolved in favor of the free use of property.

2. SAME—EQUITY—INJUNCTION.

Courts of equity will not grant injunctive relief to restrict the use of property pursuant to covenants respecting its use unless the right thereto is clear.

3. SAME—SET-BACK RESTRICTIONS.

Subdivision-wide set-back restriction requiring that buildings erected on lots within subdivision should not be nearer than 10 feet to the "front lot line" does not apply to side line of 23' x 100' corner lot, so as to preclude building of store building to within less than 10 feet from side line of lot where stores do not face upon such side line, the word "front" being given its ordinary significance in construing restrictive covenants.

4. SAME—RESTRICTIONS—RECIPROCAL NEGATIVE EASEMENTS.

If the owner of 2 or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained may do nothing forbidden to the owner of the lot sold; they being subject to a reciprocal negative easement.

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Covenants, Conditions and Restrictions § 212.
[2] 14 Am Jur, Covenants, Conditions and Restrictions § 338.
[3] 14 Am Jur, Covenants, Conditions and Restrictions § 268.
[4] 14 Am Jur, Covenants, Conditions and Restrictions § 199.
Express covenant restricting property conveyed as raising a corresponding implied covenant as to property retained by the grantor. 60 ALR 1216; 144 ALR 916.

Appeal from Wayne; FitzGerald (Frank), J. Submitted June 5, 1951. (Docket No. 26, Calendar No. 45,050.) Decided October 1, 1951.

Bill by Dorothy E. Broeder and another against Sucher Brothers, Inc., and another to restrain building closer than 10 feet to lot line on Schaefer road. Decree for defendants. Plaintiffs appeal. Appeal dismissed as to defendant Sherman. Affirmed.

*Davidson & Theut* (*Dorothy E. Broeder,* of counsel), for plaintiffs.

*Axford, Cashen & Baird,* for defendant Sucher Brothers, Inc.

CARR, J. This is a suit for injunctive relief. The bill of complaint filed by the plaintiffs in circuit court alleges that they are the owners of lots in College Park Manor subdivision of part of S½ of SW¼ of section 8, town 1 south, range 11 east, Greenfield township, Wayne county. The plat of said subdivision indicates that it is bounded on the north by Outer Drive, on the east by Meyers road, on the south by Six Mile Road West, now McNichols road, and on the west by Mennier road, now known as Schaefer road. Plaintiffs allege in their pleading that the conveyances of lots in said subdivision contained restrictions requiring that any building on any lot fronting on McNichols road or Schaefer road must be erected not nearer than 10 feet to the "front lot line," and that no building erected on any lot in the subdivision shall be nearer the side lot line than is permitted by the building code of the city of Detroit.

Plaintiffs' lots front on Schaefer road. The defendant Sucher Brothers, Inc., has acquired several lots that front on McNichols road, and is purchasing

under contract from defendant Sherman lot 50, located at the intersection of McNichols and Schaefer roads, with a frontage of 23 feet on the former and extending 100 feet along the latter. It began operations on the lots so acquired in the late summer or early fall of 1947 for the erection of a building to be used for stores. The work was continued from time to time, the west wall of said building being located on, or approximately on, the property line on the east side of Schaefer road. The instant suit was started on May 27, 1948, plaintiffs claiming that defendants were violating the restrictive covenants referred to in their bill of complaint.

On the trial of the case in circuit court plaintiffs urged that lot 50 must be regarded as fronting on both McNichols road and Schaefer road, and, therefore, that the corporate defendant could not put any part of its building, or series of buildings, within 10 feet of the latter thoroughfare without being guilty of a violation of the restriction set forth in the deeds. Reliance was placed on the doctrine of reciprocal negative easements, plaintiffs' theory apparently being that, since the lots that they had purchased in the subdivision, fronting on Schaefer road, were subject to the restriction, forbidding building within 10 feet of the property line on said road, lot 50 was likewise burdened. Apparently some reliance was also placed on the fact that the recorded plat showed a dotted line along Schaefer road indicating that the building line on all lots, including lot 50, was 10 feet east of the property line.

The trial court rejected the claim of the plaintiffs with reference to the interpretation of the restriction in question as applied to lot 50, holding that said lot fronted on McNichols road with its side line on Schaefer. The court concluded that the facts in the case did not justify the application of the doctrine

of reciprocal negative easements, and, citing *Kime* v. *Dunitz,* 249 Mich 588, that the line on the plat could not be given the force and effect of a restrictive covenant. A decree was entered denying the relief sought and dismissing the bill of complaint. Plaintiffs have appealed, asserting that the trial judge was in error in his interpretation of the restrictive covenant in question and that relief should have been granted on the theory of a reciprocal negative easement to which lot 50 was subject. By stipulation of the parties the appeal has been dismissed as to defendant Sherman.

The principal question at issue is the meaning of the restriction as set forth in the deeds. As we understand their position, appellants do not now claim that the line on the plat, above referred to, can be given effect as a restrictive covenant. As a general proposition such covenants are construed strictly against grantors and others claiming the right of enforcement. All doubts are resolved in favor of the free use of property. *Moore* v. *Kimball,* 291 Mich 455 ; *Wood* v. *Blancke,* 304 Mich 283. Courts of equity will not grant relief in cases of this nature unless the right thereto is clear. *Casterton* v. *Plotkin,* 188 Mich 333. Had it been the intention of the original owner and subdivider to treat corner lots in the subdivision as fronting on both of the contiguous streets or highways, it would have been a simple matter to express such intent in clear and unambiguous language. We think that the trial judge was right in concluding that such purpose may not be inferred from the language used. The word "front" as used in the restriction must be given its ordinary significance.

In *Tear* v. *Mosconi,* 239 Mich 242, the owner of a corner lot in Ford Park subdivision in Detroit sought to treat it as fronting on each of the intersecting streets, one of which was Parkside avenue. Restric-

tions of record prohibited the construction of build-
ings other than single residences on said thorough-
fare. Defendant sought to erect a 2-story brick
building on the corner, with 6 stores fronting on
Palmer Park boulevard and 2 on Parkside. In up-
holding the decree of the trial court granting injunc-
tive relief, it was said:

"The front line of the lots on Palmer Park boule-
vard is on that street. Stores facing or fronting
on Palmer Park boulevard would not be on Parkside
avenue within the meaning of the word 'on' as used
in the restrictions. A builder may not treat the
side line of the lot as a front line and by so doing
avoid the restrictions. Stores facing or fronting
on Palmer Park boulevard may occupy fully Palmer
Park boulevard lots, but a store may not be built
'on' Parkside avenue."

By analogy we think it must be said in the instant
case that defendant may not be required to treat
the side line of his lot as a front line, resulting in
such lot being subjected to a double restriction. No
claim is made that defendant has constructed a build-
ing with stores fronting on Schaefer road, or that
it has in any way treated lot 50 as "fronting" thereon.

In support of their claim that a corner lot, located
as is lot 50 in the instant case, should be treated as
fronting on both contiguous streets, plaintiffs cite
*City of Des Moines* v. *Dorr,* 31 Iowa 89. The ques-
tion there at issue had reference to the liability of
the defendant for the cost of building a sidewalk
constructed by the plaintiff adjacent to premises
which defendant occupied under a lease. By the
terms of the contract between lessor and lessee, the
latter agreed to keep up the "sidewalks" in front
of the property. It was held that under a proper
construction of the lease defendant had assumed
liability with reference to sidewalks contiguous to
the lot occupied, along each of the intersecting

streets. Emphasis was placed on the fact that the parties in making their agreement had used the term "sidewalks," clearly indicating that they had more than one in mind. In view of the facts involved, the decision of the Iowa court may not be regarded as in point in considering the case at bar. It was, however, referred to in *Waters* v. *Collins,* 70 A 984 (NJ Ch), also cited by appellants, as authority for the proposition that a corner lot may be regarded as fronting on each of the intersecting streets. Circumstances may require such holding in certain instances, but under the facts in the case at bar the claim is not tenable and is at variance with the holding in *Tear* v. *Mosconi, supra.*

The doctrine of reciprocal negative easements has been considered by this Court in numerous cases. In *Sanborn* v. *McLean,* 233 Mich 227 (60 ALR 1212), it was held (quoting from the syllabus):

"If the owner of 2 or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained may do nothing forbidden to the owner of the lot sold; they being subject to a reciprocal negative easement."

In that case lots in the subdivision involved, other than those fronting on Woodward avenue and Hamilton boulevard, were restricted to use for residence purposes. The common owner had not expressly so subjected 2 lots retained by him, and the conveyances under which defendants claimed did not contain the restriction. It was held, however, that they were put on inquiry as to the existence of restrictions, that the lots in the hands of the original owner were subject to restrictions imposed on purchasers of the other lots, including the plaintiffs, and that

the lots retained could not be used except for residence purposes.

The propriety of decreeing reciprocal negative easements has been recognized in many cases, when found to be justified by the facts. The applicable principles involved were considered at some length in *Denhardt* v. *De Roo,* 295 Mich 223, and in *Eveleth* v. *Best,* 322 Mich 637. In the case at bar lot 50 and the lots owned by plaintiffs are not similarly situated. As found by the trial court, lot 50 does not front on Schaefer road but rather on McNichols road. It is subject to the restrictive covenant as to construction along the latter highway. To decree it also subject to the easement now claimed by plaintiffs would result in imposing on it a burden in addition to that created by the restrictive covenant as set forth in the deeds, and would, in consequence, create a situation at variance with the expressed intent of the subdivider and common owner. It may be noted in this connection that plaintiffs' theory, if sustained, would result in subjecting lot 50 to a double restriction, as a consequence of which approximately $\frac{1}{2}$ of it would be unavailable for building purposes. On the record before us plaintiffs are not entitled to the relief sought.

The conclusions above indicated render it unnecessary to consider other questions discussed by counsel in their briefs and on the oral argument of the case. The decree of the trial court is affirmed, with costs to defendant.

REID, C. J., and NORTH, DETHMERS, BUTZEL, BUSH-NELL, and SHARPE, JJ., concurred with CARR, J.

BOYLES, J., concurred in the result.