### SAMPSON v. KAUFMAN.

1. COVENANTS—CONSTRUCTION—FREE USE OF PROPERTY.
   Covenants are construed strictly against those claiming the right
   of enforcement and all doubts are resolved in favor of the free
   use of the property, when a question arises as to the meaning
   of restrictions as set forth in a deed.

2. SAME—ENFORCEMENT OF RESTRICTIONS.
   Courts of equity will not enforce restrictive covenants unless the
   right thereto is clear.

3. SAME—CONSTRUCTION.
   Unambiguous restrictive covenants will not be enlarged or ex-
   tended by construction.

4. SAME—LAPSE OF RESTRICTIONS—EXTENSION.
   Defendants were not subject to recorded restrictions which had
   theretofore expired by virtue of passage of time and renewal
   or extension thereof was not effected in accordance with pro-
   visions therein until after defendants had purchased their lot
   and they did not join in the extension.

5. SAME—RECIPROCAL NEGATIVE EASEMENTS NOT RETROACTIVE.
   Reciprocal negative easements are not retroactive.

6. SAME—CONSTRUCTION—GENERAL PLAN—TIME.
   A building restriction, unless perpetual, terminates with the ex-
   piration of the time limited for its duration and may not be
   extended by virtue of a general plan of development effected
   pursuant to the express restriction even to accomplish what
   it is thought the parties may have desired had a situation,
   which later developed, been foreseen by them at the time the
   restriction was written.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Covenants, Conditions and Restrictions §§ 8, 210.
[1–3] 14 Am Jur, Covenants, Conditions and Restrictions § 212.
[4, 6] 14 Am Jur, Covenants, Conditions and Restrictions § 205.
[5] 17 Am Jur, Easements §§ 13, 28.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 10, 1956. (Docket No. 56, Calendar No. 46,594.) Decided March 1, 1956.

Bill by Edward K. Sampson, Norma E. Sampson and other property owners against Jack M. Kaufman and Sorel Kaufman to restrain building operations without submission and approval of plans. Bill dismissed on motion. Plaintiffs appeal. Affirmed.

*Patterson & Patterson and Barrett,* for plaintiffs.

*S. Brooks Barron,* for defendants.

KELLY, J. Plaintiffs sought an injunction restraining defendants from proceeding with the construction of their home. This is an appeal from an order refusing the injunctive relief and dismissing the bill of complaint.

The bill of complaint was filed by 6 homeowners in Franklin Park Heights, a subdivision in Oakland county, Michigan. Plaintiffs' deeds and defendants' deed carried the clause "subject to restrictions of record."

The restrictions of record to be construed in this appeal are as follows:

"Fifth. Approval of Plans. The plans and location of all buildings, structures, water tanks, walls, fences, and other structures, including plans for any major grading of lots, for planting, driveways and walks must be approved in writing by the seller or his duly authorized representative before the beginning of any construction work thereon, and such plans as approved must be strictly adhered to. * * *

"(17th) The foregoing restrictions shall be covenants running with the land and shall be operative until January 1, 1951; but may, however, be extended for such further period as may be deemed desirable

by 2/3 of the lot owners, and if so extended, shall be submitted in writing and signed by 2/3 of the lot owners and recorded in the register of deeds office of Oakland county and when so recorded shall become binding on all owners of said subdivision."

Plaintiffs contend the trial court erred in accepting the first part of paragraph 17, namely: "The foregoing restrictions shall be covenants running with the land and shall be operative until January 1, 1951," and disregarding the remaining part of this paragraph.

Defendants acquired title on October 1, 1952, 21 months after the date (January 1, 1951) mentioned in the restrictions. On September 24, 1954, plaintiffs and other lot owners, constituting 2/3 of all lot owners in the subdivision, recorded an extension of restrictions to January 1, 1976. This action was 23-1/2 months after defendants acquired their title. Defendants did not sign this extension agreement.

Defendants commenced construction of their home without first submitting their plans for approval to George Wellington Smith, who was the original seller of the subdivision in question. The extension to January 1, 1976, readopted the restrictions above referred to in the original restrictions which were operative until January 1, 1951.

When a question arises as to the meaning of restrictions as set forth in a deed, such covenants are construed strictly against those claiming the right of enforcement and all doubts are resolved in favor of the free use of the property. Courts of equity will not grant relief in cases of this nature unless the right thereto is clear. See *Broeder* v. *Sucher Brothers, Inc.,* 331 Mich 323 (30 ALR2d 554).

The restrictions in the present case are not ambiguous and will not be enlarged or extended by construction by this Court. The restrictions were operative until January 1, 1951. When defendants ac-

quired title to their lot, plaintiffs, and other lot owners, had not exercised their right to extend the restrictions. Their failure to do so before January 1, 1951, brought the restrictions to an end on that date. This Court has repeatedly held that restrictions are not retroactive. Defendants were not a party to the extension and the trial court did not err in holding that they were not bound by said extension of restrictions.

Plaintiffs maintain, however, that even though the restriction agreement expired on January 1, 1951, yet the injunctive relief sought could have been sustained by showing the general plan of development and the establishment of reciprocal easements.

Plaintiffs cite cases where this Court has held that restrictions upon the use of property by reason of a general plan are substantial property rights that owners can maintain and support and that the doctrine of reciprocal negative easements will be observed. See *Indian Village Association* v. *Barton,* 312 Mich 541; and *Sanborn* v. *McLean,* 233 Mich 227 (60 ALR 1212).

In *Sanborn* v. *McLean, supra,* p 230, we find the following important statement:

"It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan."

The cases cited by appellants deal with a uniform method of development placing lot owners on notice that a set of building restrictions may be in effect. None of the cases cited, however, involve the question presented in this appeal, namely: Will the

general-plan doctrine apply after there is a definite restriction which comes to an end through the expiration of the time set forth in that restriction?

In *Moore* v. *Kimball,* 291 Mich 455, the plaintiffs endeavored to sustain a reciprocal negative easement after a 25-year restriction period had expired. The Court in that case said (pp 461, 462): ·

"Upon a review of the record we are of the opinion that the restrictions were clear and unambiguous. They terminated upon expiration of the time provided for their duration. They cannot be enlarged beyond their plain language to encompass that which was not expressed; and they cannot be extended by evidence of what the parties intended by such restrictions; but are conclusive on their face. * * *

"From the foregoing, it is our conclusion that no claimed restriction is enforceable against defendant since the restrictive period has expired and no negative reciprocal easement runs against defendants' premises after such time."

The only difference between *Moore* v. *Kimball, supra,* and the present case, is that in the *Moore Case* the restrictions were to run for a period of 25 years from the date of subdivision without a provision for an extension. That difference, however, would not affect the legal problem submitted in both cases. The failure of the lot owners to effect an extension in the present case before the expiration date brought the restrictions to an end. The subsequent agreement nearly 4 years later could not be an agreement between those who signed same and defendants, who did not or refused to sign. The restrictive period had expired, and no negative reciprocal easement ran against defendants' premises after said date of expiration.

The *Moore Case, supra,* dealt with the question of a general plan after the expiration of the restric-

tion period, and in that case this Court said (pp 460, 461):

"It is claimed that the parties intended that the expression of the 25-year period of restriction was for the purpose of building up a residential neighborhood; that the period was defined merely in order to terminate the responsibility of the subdividers 'in protecting the proper development of the street in the way it was originally laid out;' that it was contemplated that there would be no changes after such period, and that the 'general common plan was to keep it as a residence street permanently.'

"The supposed intention of the parties cannot overcome their express agreement, 18 CJ, Deeds, § 198, p 254; and a restriction will not be enlarged or extended by construction even to accomplish what it may be thought the parties may have desired had a situation, which later developed, been foreseen by them at the time the restriction was written. *Davidson* v. *Sohier,* 220 Mass 270 (107 NE 958). Where the language of the restriction is clear, the parties will be confined to the language which they employed. A building restriction, unless perpetual, terminates with the expiration of the time limited for its duration." (Citing cases.)

The order of the trial court dismissing the bill of complaint is affirmed. Costs to defendants.

DETHMERS, C. J., and SHARPE, SMITH, REID, BOYLES, CARR, and BLACK, JJ., concurred.