W. L. CRAWFORD, III, et al., Appellants,

v.

Henry L. BOYD, Appellee.

No. 17104.

Court of Civil Appeals of Texas, Fort Worth.

April 3, 1970.

Rehearing Denied May 1, 1970.

Coleman, Whitten & Philips, and Earl L. Coleman, Denton, for appellants.

Gerald E. Stockard, Denton, for appellee.

## OPINION

BREWSTER, Justice.

The plaintiffs, A. H. Stepken, William L. Crawford III, and Hal I. Padgett sued the defendant, Henry L. Boyd, for damages and injunctive relief.

The defendant, Boyd, and one Mabry Courtney, had jointly owned a tract of land in Denton County near Lake Dallas, and in 1961 they platted such land and dedicated it as an addition which they named Rocky Shore, a subdivision in Denton County, Texas.

The instrument by which the addition was dedicated contained some restrictions. Those that are material here will be set out below.

"2. No shacks or tents shall be permitted on this property * * *. Trailer homes are permitted on lots approved for trailers, being 33 through 54, both inclusive, and trailers may not be older than 1955 models.

"6. All lots shall be residence lots and shall not be used for business, except lots No. 1, 55, 56, 57, 58, 59, 60, 61, 95, 96, 124 and 123, which each may be used for a bona-fide business. All other lots shall be residence lots only and no trailer homes shall be permitted thereon, except as provided in restriction two hereinabove, except that lots 33 through 54, inclusive, may be permitted for trailers, not older than 1955 models as set out in restriction No. Two hereinabove. * * *"

At the time this suit was filed each of the plaintiffs was the owner of a lot in Rocky Shore Addition and each had built a substantial residence on his lot and this was their reason for being interested in seeing that applicable restrictions in the addition were enforced.

Restrictive covenants such as the one involved here forbidding the placing of trailer homes on lots in residential areas are designed to exclude an influx of travel trailers occupied by transients on the theory that their presence in the neighborhood would depreciate the value of the area for substantial permanent homes.

Plaintiffs' contention in this case is that defendant, Boyd, has moved onto Lots 56, 57, 58 and 59, which lots he still owns, a trailer home or trailer house, and that such conduct was in violation of the restrictions above set out that control the type of structure that can be placed on such lots.

The plaintiffs, in addition to damages, sought a mandatory injunction ordering defendant to remove the structure complained of from the lots in question and also sought a permanent injunction enjoining defendant from violating any of the restrictions in the future.

The case was tried without a jury and judgment was rendered for defendant denying all of the relief sought by plaintiffs.

No findings of fact or conclusions of law were filed by the trial court and the record does not show that any were requested. The record does not in any way indicate the reason why the trial judge rendered the judgment that was rendered in the case. There are no fact findings in the judgment itself.

It is settled in Texas that in a nonjury trial where findings of fact and conclusions of law are not requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup., 1968). For a large number of cases on this see 4 Tex.Digest, Appeal & Error, Key 846 (2, 5).

In such a case the trial court's judgment implies that all necessary fact findings were made by that court in support of the judgment. In determining whether there is any evidence to support the judgment and the implied findings of fact incident thereto the appellate court can consider only that evidence that is most favor-

able to the issue and must disregard entirely that which is opposed to it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950).

■■■ There was testimony offered during the trial to the following effect: before August, 1967, defendant had a house in which he and his family lived that was located on lots 89 and 90 of Rocky Shore Addition; this house burned and thereafter in August, 1967, defendant went to a mobile home manufacturing company in Fort Worth and contracted with them to build him a building to his specifications, same being 12 feet wide by 64 feet long; he had this structure built as a building intending to have it moved onto his lots and to live in it as his home; it was built at the factory and moved by that company onto Lots 56 and 57 of Rocky Shore Addition, which lots defendant owns; before buying the building he built a concrete foundation on his lots which consisted of 4 slabs of reinforced concrete about 12 feet long with one to go under each end of his building and the other 2 slabs located toward the center of the structure; he also built a large septic tank to be used in connection with the structure before buying his building; when he bought this building he did not order any axles or wheels to go with it; and did not get any; the mobile home company brought the building out to his lots wtih a special truck that had a fifth wheel; they pulled it there with a tractor and when they brought it out they had axles and wheels under it; when they got the building onto defendant's property they set it on the concrete foundation and took their wheels and axles out from under the building and took them back with them; after getting this building located onto his lots, defendant built a 12 foot by 16 foot building or room onto the back side of such building and this was fastened onto the building that he bought with nuts and bolts; this addition is wooden framed with aluminum siding, the same as the other one is; this addition was added within one month after he purchased the building from the mobile home company; the two structures were so fastened together at time of trial that they constitute one structure; he has also poured a 12 foot by 20 foot foundation or slab in front of the structure on which he intends to erect a rumpus room with a fireplace as soon as he can get the money to do it with; he has lived in that area since 1960; his present intentions are for him and his family to live in this building on these same lots from now on as their home; he intends now that he will never move the building; the buildings are so constructed that now it would not be possible to move any part of them without damaging the whole thing materially; his intention when he first started his project was to build him a permanent home on the lots in question; the buildings are tied down to the lots at each end by means of cables; the foundation cost him about $250.00 and the back room cost $1,800.00 and the part he bought from the mobile home company cost over $7,000.00; and the invoice shows that this part has 3 bedrooms in it.

The defendant in his answer specially denied that he has placed any trailer on the lots in question or on any other lot in the addition. It was his contention during the trial that the structure complained of by plaintiffs is not a "trailer home" within the meaning of the restrictions involved.

The dedicating instrument containing the restrictions in question made no attempt to define "trailer homes." Under such circumstances a court will apply to such phrase its most commonly accepted meaning. In Re Willey, 120 Vt. 359, 140 A.2d 11 (1958).

Webster's New International Unabridged Dictionary (Third Ed.) defines "trailer" as "4c: a nonautomotive highway * * * vehicle designed to be hauled (as by a tractor, motor truck, or passenger automobile)."

It defines "vehicle" as "a means of conveyance."

Ballentine's Law Dictionary (Third Ed.) in defining "trailer" says it is "A vehicle having a large and commodious body, which can be towed upon the highway but is usually parked and used as living quarters; sometimes called a house trailer."

Ballentine also defines a "vehicle" as "An instrumentality for the carrying of goods or people."

We believe the phrases "house trailer" and "trailer home" are synonymous.

The structure complained of was built by a mobile home company and from its description it looked a lot like a mobile home in that it was 12 feet wide and 64 feet long, with a wooden frame and with the exterior siding of aluminum. But it did not have axles or wheels. The owner never intended to use it as a trailer or as a vehicle. He bought it for the purpose of putting it on his lots, affixing it to his realty, and he says his intentions are to use it from now on as a home for himself and family at the location where it has been placed. It is tied to the ground with cables and connected to the septic tank and has become a part of the real estate.

This is not the first time that a question such as this has been before the courts. A list of cases that have been decided that support the conclusion that the structure involved in this case is not a "trailer home" are the following: Manley v. Draper, 44 Misc.2d 613, 254 N.Y.S.2d 739 (Sup.Ct., Oneida County, N.Y., 1963); Douglass Township v. Badman, 206 Pa.Super 390, 213 A.2d 88 (1965); Morin v. Zoning Board of Review of Town of Lincoln, 102 R.I. 457, 232 A.2d 393 (1967); Lescault v. Zoning Board of Review of Cumberland, 91 R.I. 277, 162 A.2d 807 (1960); and In Re Willey, supra.

These cited cases made it clear that the question for determination before a court in a case such as this is not what possible use in the future the defendant might make of the structure in question but the use that is actually being made of it at the particular time in question.

In the case of Morin v. Zoning Board of Review of Town of Lincoln, supra, the structure involved had unquestionably been a mobile home and was pulled onto the lot in question with its wheels and axles under it. When it arrived on the lot it was placed on a foundation of cement blocks, its wheels were removed, it was permanently connected onto a cesspool, water services were tied into it, electricity connected and a telephone was installed.

The court there recognized that the question before it for determination was whether this once mobile home had become so immobilized that, in its then converted state, it was no longer a mobile home, but a single family dwelling.

That court held that the structure as converted was neither a vehicle nor a portable structure and therefore not a trailer or mobile home.

The only possible theory under which the plaintiffs would have been entitled to an injunction ordering defendant to remove the structure in question from his lots would be on the theory that plaintiffs' lots in question were so restricted that trailer homes could not be placed on them and that defendant's questioned structure is in fact a trailer home within the meaning of such restrictions.

It is obvious from what has been said above that one legal theory that finds support in the evidence and upon which the trial court could have based its judgment in this case denying the mandatory injunctive relief sought herein is the theory that the structure complained of is not a "trailer home." Under the evidence in the case the trial judge would have been entirely justified in making such a finding. This being true it is the duty of this court to apply the rule announced above from the case of Seaman v. Seaman, supra, and to affirm that part of the trial court's judgment.

One of the defendant's contentions in this case was that Lots 56 and 57 of Rocky Shore Addition are not restricted against the use of trailer homes on such lots. Defendant contends that a proper construction of the dedicating instrument is to the effect that the restriction against trailer homes does not apply to these particular lots, they being the ones where the structure in question is located. It is not necessary for us to pass on this question in deciding this appeal and we do not attempt to pass on it. For the purpose of this opinion and in reaching a decision to affirm the trial court's judgment, we have assumed that the two lots in question are in fact covered by the restriction against trailer homes.

For the reasons stated above we overrule plaintiffs' first point claiming error of the trial court in refusing to grant them a mandatory injunction ordering a removal of the structure in question.

Plaintiffs' second point is that the trial judge erred in not granting a permanent injunction enjoining defendant from again (in the future) placing any trailer house or trailer houses on any of the lots in the subdivision, except those where trailer houses are allowed.

Defendant's testimony on this point is in substance as follows: defendant had no intention at the time of the trial to ever put a trailer park on any of the lots in question; and he recognized the restriction against trailer houses and if some one started putting one on the lots that are restricted against them, he would stop them from doing it himself.

The trial court also denied plaintiffs this relief.

An application for an injunction should be denied where the evidence in the case shows no intention on the part of the defendant to do the things that are sought to be enjoined. Luccous v. J. C. Kinley Company, 376 S.W.2d 336 (Tex.Sup., 1964), and for other cases holding the same way

see 31 Tex.Jur.2d 69, Injunctions, Sec. 22, note 11.

Applying the rules announced above from the case of Seaman v. Seaman, supra, and Renfro Drug Co. v. Lewis, supra, we must also overrule plaintiffs' second point.

The trial court's judgment is affirmed.