NORTH CHEROKEE VILLAGE MEMBERSHIP v MURPHY

Opinion of the Court

1. Covenants—Construction—Free Use of Property.

As a general rule, covenants are construed strictly against those claiming the right of enforcement, with all doubts resolved in favor of the free use of property.

2. Covenants—Equity—Clear Meaning.

A court of equity will not enlarge the scope of a covenant beyond the clear meaning of the language employed.

3. Covenants—Statutes—Statutory Definitions—House Trailers —Mobile Homes.

Statutory definitions of "trailer coaches" and "mobile homes" may not be utilized to determine the meaning of "house trailer" used in a restrictive covenant where the statutory definitions are by their own terms limited to the purposes of the particular statute or section in which they are found; to impute a statutory meaning to the language in a private covenant would be to rewrite the parties' obligations in a manner not contemplated by the parties (MCLA 125.1002[a], 257.719a[b]; MSA 5.278[32][a], 9.2419[1][b]).

4. Covenants—House Trailers—Mobile Homes.

A double-wide, 24 by 44 foot mobile home, removed from its chassis and mounted on a concrete block foundation, and equipped with connections to gas, electric, water and sewer lines is not a "house trailer" as that term is used in a restrictive covenant which states "no house trailers or tents allowed".

Concurrence by R. M. Maher, P. J.

5. Deeds—Covenants—Restrictions—Ordinary Significance of Words.

*The words used in restrictions set forth in deeds must be given*

References for Points in Headnotes

[1–6] 20 Am Jur 2d, Covenants, Conditions, and Restrictions §§ 5, 6, 185 *et seq.,* 213, 261.

Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation. 96 ALR2d 232.

*their ordinary significance, and unless a proposed use is clearly
in violation of a restriction, it will not be enjoined.*

6. Covenants—House Trailers—Ordinary Meaning.

*A dwelling which does not fit within the ordinary meaning of
"house trailer" is not clearly within a restrictive covenant
prohibiting house trailers and therefore its construction should
not be enjoined.*

Appeal from Roscommon, Carl L. Horn, J. Submitted May 11, 1976, at Detroit. (Docket No. 23165.) Decided October 18, 1976.

Complaint by North Cherokee Village Membership against Joseph Murphy, Nancy Murphy, Gary A. Peters and Margaret L. Peters seeking removal of a mobile home from defendants' land. Injunction granted, ordering defendants to remove or raze the structure. Defendants Peters appeal. Reversed, and remanded with instructions to rescind the injunction.

*Benson, Sabin & Bloomquist, P. C.,* for plaintiff.

*Charles H. Miltner,* for defendants Peters.

Before: R. M. Maher, P. J., and M. J. Kelly and D. C. Riley, JJ.

D. C. Riley, J. We are asked to decide whether a restrictive covenant banning "house trailers and tents" can be interpreted to include within its prohibition the placement of a "double-wide" mobile home on appellants' lot.

Appellants' deed, like those of all other property owners in the North Cherokee Village subdivision, contains the following restrictive covenant:

"No house trailers or tents allowed on subdivision."

Aware of the restriction, appellants consulted their real estate agent and township officials to ask whether a "double-wide" mobile home would fall within the language of the covenant. In addition, they made somewhat half-hearted but unsuccessful attempts to seek the advice of the president of the homeowners association in their subdivision. The real estate agent advised them that as long as the structure complied with other deed restrictions, they could place the mobile home on their lot. They did so.

The mobile home, manufactured in two halves and carted separately to the premises, bore a certificate of title denominating it as a "trailer coach, double-wide". Pursuant to a Denton Township building permit the two sections were placed on a concrete block foundation and bolted together after removal of the two separate chassis. As conjoined the edifice has dimensions of 44 feet by 24 feet with three bedrooms, two baths, living room, dining room and kitchen, totaling 1,056 square feet of living space. Its purchase price was $12,000. It is equipped with connections to gas, electric, water and sewage lines. The roof is gabled with asphalt shingles. In all other respects, the structure complies with applicable deed restrictions, namely, clauses prohibiting structures with less than 900 square feet of usable floor space or those with flat roofs.

Two months after the mobile home had been placed on the lot, appellee brought suit seeking removal of the structure. The court below, holding that the wording of the restriction could reasonably be construed to embrace appellants' dwelling,

issued an injunction commanding appellants to remove or raze the structure.

We begin with recognition of the general rule that covenants are construed strictly against those claiming the right of enforcement and all doubts are resolved in favor of the free use of property. *Sampson v Kaufman,* 345 Mich 48; 75 NW2d 64 (1956), *Broeder v Sucher Bros, Inc,* 331 Mich 323; 49 NW2d 314 (1951). In addition, it is well settled that a court of equity will not enlarge the scope of a covenant beyond the clear meaning of the language employed. *Sampson, supra, Broeder, supra.*

In urging our affirmance of the injunction, appellee refers us to the definition of trailer coach contained in the Mobile Home Park Act (MHPA), MCLA 125.1002(a); MSA 5.278(32)(a)[1], and to the definition of mobile home in the Michigan Vehicle Code, MCLA 257.719a(b); MSA 9.2419(1)(b),[2] both of which, it is argued, prove that appellants' mobile home is a "house trailer" under the covenant.

We believe this argument miscarries. To ferret the meaning of "house trailer" by reference to the various definitional provisions of the Michigan Vehicle Code and the MHPA is to pursue false leads. The quoted definitional sections in these two statutes each begin with the caveat that the defined terms have the meaning so ascribed to them *for purposes of the particular statute or section* in

---

[1] "Sec. 2. *As used in this act:*

(a) 'Trailer coach' means a mobile home, a trailer or a single family manufactured living unit which is transported to a site as 1 or more modules, any of which is so constructed as to permit occupancy as a dwelling or sleeping place by 1 or more persons, and licensable as a 'trailer coach' under [the Michigan Vehicle Code, MCLA 257.1 to 257.1518; MSA 9.1801 to 9.3200(18)]." (Emphasis added.)

[2] "(b) The term 'mobile home' *as used in this section* shall be construed to mean a prebuilt housing module or a home which is designed to be transported by any motor vehicle upon a public highway and designed, equipped and used for sleeping, eating and living quarters, or is intended to be so used." (Emphasis added.)

which they are found. Hence, if this Court were to impute a statutory definition to the language in a private restrictive covenant, we would be rewriting the parties' respective obligations in a manner not contemplated by their original undertaking.

Such an approach appears all the more ill-advised when one considers that the Michigan Vehicle Code and the MHPA were amended in 1969 and 1970 respectively to add the term modular or modules in the definition of mobile homes, MCLA 257.719a(b); MSA 9.2419(1)(b), and trailer coaches, MCLA 125.1002(a); MSA 5.278(32)(a), whereas the deed restrictions were written in 1967.

Thus, it strains credulity to assume that the drafter of the covenant by using the words "house trailer" in 1967 really meant these words to encompass whatever the Legislature would later define as a mobile home or trailer coach. We cannot ascribe such elasticity to the phrase "house trailer".

We are presented, then, with the question whether appellants' "double-wide mobile home" is a house trailer within the scope of a *restrictive covenant* proscribing "house trailers or tents". This narrow issue is one of first impression in Michigan although *Courtland Twp v Cole,* 66 Mich App 474; 239 NW2d 630 (1976), did consider the validity of a township zoning ordinance banning "trailer coaches" in agricultural and residential zones. In *Cole,* this Court upheld the ordinance despite defendant mobile homeowner's claim that removal of the axles and undercarriage deprived the home of mobility and thus transformed it into an ordinary dwelling. Since the township's ordinance defined "trailer coach" expansively as "any vehicle or structure * * * so designed that it is *or may be mounted* on wheels", *Id* at 476–477, this

Court held that the mobile home violated the ordinance because of its potential mobility. In the present case, however, *Cole* sheds little light since, unlike the zoning ordinance, the terse deed restriction makes no reference to the possibility that the wheels and chassis might be reconnected to a "house trailer".

A view of those cases outside of Michigan which have fully explored the issue reveals what at first blush might appear as the weight of authority in support of appellee's position. On closer examination, however, these cases are clearly distinguishable from the case at bar because, like *Cole, supra,* the various restrictive covenants analyzed by the courts were phrased much more comprehensively than the instant restriction.

In *Brownfield Subdivision, Inc v McKee,* 19 Ill App 3d 374; 311 NE2d 194 (1974), *aff'd,* 61 Ill 2d 168; 334 NE2d 131 (1975), the Illinois Court of Appeals, faced with a suit by adjoining lot owners to remove defendant's double-wide mobile home from their subdivision, affirmed the lower court in upholding the following restrictive covenant:

" 'No structure of a temporary character, trailer, basement, tent, shack, mobile home or garage shall be used on any lot, at any time, as a residence, either temporarily or permanently.' " 19 Ill App 3d at 374; 311 NE2d at 195.

There the court held that defendant's detachment of the mobile home's running gear and undercarriage and the placement of the unit on a concrete block foundation with triple I-beams as additional support did not change its basic character as a mobile home:

"In essence, we come down to this, once a mobile

home, always a mobile home. * * * Having started life as a mobile home, lack of mobility created by the user does not render it not a mobile home." *Id* at 379; 311 NE2d at 198.

When the *McKee* litigation reached the Illinois Supreme Court the mandatory injunction requiring removal was again affirmed but on different grounds. Relying on *Timmerman v Gabriel,* 155 Mont 294; 470 P2d 528 (1970), the court held that since the mobile home merely rested on the concrete block foundation and the triple I-beam supports without being permanently attached, it came within the language of the covenant prohibiting a "structure of a temporary character [or] trailer".

In *Timmerman, supra,* the court held that a double-wide mobile home with wheels, springs, axles and drawbars removed was a trailer within the meaning of the following restrictive covenant:

"No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other out building shall be used on any lot at any time, as a residence either temporarily or permanently * * * ." 155 Mont at 295–296; 470 P2d 528, 529.

In contrast to *Timmerman* and *McKee, supra,* the present case reveals a crucial distinction. The instant prohibition against "house trailers and tents" pales in comparison to the more comprehensive language of the restrictive covenants considered by the Illinois and Montana courts. Despite the dubious rationale of the Illinois appellate court in *McKee, supra* (a mobile home is a mobile home is a mobile home) the court there could at least cite restrictive language specifically banning mobile homes, whereas this Court is asked to engage in semantic sleight of hand by declaring a two

piece mobile home, bereft of its chassis and securely joined together, to be a house trailer. We decline the invitation.

An additional reason militating against the enforcement of the covenant in the present case is that the various covenants interpreted by the Illinois and Montana courts contained language specifically barring temporary structures, whereas the instant restriction in its abrupt manner carries no such prohibition.

Even assuming *arguendo* we were to infer an intent to ban transient structures by reading the phrase "house trailer and tent" in a light most favorable to plaintiff, we do not believe appellants' modular unit can accurately be described as any less permanent[3] than other kinds of sectional, prebuilt dwellings currently on the market. Surely, factory-built housing would not violate the covenant; we discern, therefore, no significant reason why the appellants' summer home is any greater encroachment on the sparse language of the restriction.[4]

---

[3] With the passage of the Mobile Home Construction and Safety Standards Act of 1974, 88 Stat 700–714; 42 USC §§ 5401–5426, empowering the Secretary of Housing and Urban Development to promulgate national standards improving the quality and durability of mobile homes, we believe that prior notions of mobile homes as rapidly deteriorating structures will become more and more inaccurate. *See also,* proposed regulations under this act relating to fire safety, weather resistance, and specifications for plumbing and electrical systems in mobile homes. 40 Fed Reg 26930 (1975).

[4] For an illustration of a restrictive covenant with prohibitory language sufficient to cover appellants' double-wide mobile home within its terms, *see* Shepard's Mobile Homes and Mobile Home Parks (1975 ed), § 8.12, p 152:

"No building except a private dwelling house shall be erected or permitted on the conveyed premises or any part thereof. No trailer or mobile home (regardless of its lack of mobility), tent, shack, stable, or barn shall be placed thereon except a shack, stable, or barn used as a necessary outbuilding, nor shall any structure of a temporary character be used at any time as a residence. The intent of this covenant is to restrict the use of the property to a private dwelling of a conventional nature, and to exclude all other structures except necessary

Consequently, we adopt the reasoning espoused in *Hussey v Ray,* 462 SW2d 45 (Tex Civ App, 1970),[5] wherein the court commented on the question now before us:

"Appellees' claim that their mobile home has been fully converted into a permanent residence with all the conveniences and attributes of a modern one-family dwelling, appears to have been conclusively established. The structure erected on the lot was built for human habitation, has all the attributes of a permanent type dwelling, was used as such and was fixed to the realty by various connections. Undoubtedly it could be moved from its foundation to another location but so can any wooden frame house. It occurs to us that when viewed in a light most favorable to the free use of the lot, the restriction is not sufficient to prohibit the type of structure involved here." *Id* at 47–48.

If given the opportunity to resume improvements on the property which were halted by this litigation, appellants should be able to blend their dwelling into the surrounding landscape in a manner akin to other houses in the subdivision. Once appellants' planned landscaping of the property and erection of a carport are completed, their modular unit should closely resemble a conventionally built home which we note by reference to the photo exhibits, *viz.,* plaintiff's exhibit 4–0, already stands in one of the North Cherokee subdivisions.

---

outbuildings, whether or not permanently affixed to the land. This covenant shall not exclude prefabricated or modular homes of a conventional type, though not constructed on the premises."

[5] While we realize the Texas courts appear to have vacillated on this recurrent issue, *see Crawford v Boyd,* 453 SW2d 232 (Tex Civ App, 1970), *Smith v Bowers,* 463 SW2d 222 (Tex Civ App, 1970), *Bullock v Kattner,* 502 SW2d 828 (Tex Civ App, 1973), *Atkins v Fine,* 508 SW2d 131 (Tex Civ App, 1974), *Phillips v Zmotony,* 525 SW2d 736 (Tex Civ App, 1975), *rev'd* 529 SW2d 760 (Tex, 1975), the reasoning of *Hussey, supra,* has not been recanted by the Texas judiciary although on occasion it has been distinguished factually, *e.g. Atkins, supra* at 133.

"The courts must acknowledge that pre-built homes, mobile or otherwise, which in a given case may be more attractive in appearance and design than many conventional homes built completely on the site, are a part of our changing society, and give recognition to the fact that the law must be responsive to the best interests of those whom it is designed to serve. Unless such dwellings are expressly and explicitly excluded by the terms of a protective covenant, their use should not be enjoined, provided that in each case, the dwelling otherwise conforms to the spirit of the restriction." *Yeager v Cassidy,* 20 Ohio Misc 251, 256; 253 NE2d 320, 323-324 (1969).

This cause is reversed and remanded to the trial court for rescission of the injunction.

M. J. KELLY, J., concurred.

R. M. MAHER, P. J. *(concurring).* Finding myself unable to agree with much of what the majority has stated, I must concur separately.

The words used in restrictions set forth in deeds must be given their ordinary significance. *Broeder v Sucher Bros, Inc,* 331 Mich 323, 326; 49 NW2d 314 (1951). *Harris v Roraback,* 137 Mich 292; 100 NW 391 (1904). Unless the use proposed is clearly in violation of a restriction, it will not be enjoined. *Sampson v Kaufman,* 345 Mich 48; 75 NW2d 64 (1956).

The rather substantial dwelling defendants placed upon their lot would not ordinarily be considered a house trailer. Assembled, placed upon a foundation and connected to utilities, this structure of over 1,000 square feet does not fit within the ordinary meaning of house trailer.

The injunction should not have issued to restrain a use not clearly within the restrictions.