*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS MAZZOLA, KATHRYN MAZZOLA, EDWARD SCHERVISH, RHONDA SCHERVISH, LILLIAN KACHADOURIAN, BEHROUZ OSKUI, ANTHONY SAID, ARISTIDIS THANASAS, PANAGIOTA THANASAS, PETER MACUGA, LISA MACUGA, GREGORY AHEE, ELIZABETH AHEE, BENJAMIN BEST, LYNNE BEST, and BHARANI YERRAMALLI,

Plaintiffs-Appellants,

v

DEEPLANDS DEVELOPMENT COMPANY LLC,

Defendant-Appellee.

FOR PUBLICATION
July 25, 2019
9:00 a.m.

No. 343878
Wayne Circuit Court
LC No. 17-017617-CH

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

Restrictive covenants and negative reciprocal easements on real property implicate two fundamental freedoms—the freedom to contract and the freedom to use property. When an owner voluntarily agrees to restrict a particular use of real property, the owner need not, at the same time, also reserve all of the other, lawful uses of the property. The freedom to use real property is the baseline, and it is the restriction of that freedom through covenants and easements that must be made with clarity and particularity.

In this action, plaintiffs seek to impose a restrictive covenant or reciprocal negative easement on their neighbor's real property to prevent the development of a cul-de-sac and 18 residential buildings. Because the neighbor's proposed development plan does not run afoul of the actual restrictive covenants and there is no basis to impose a reciprocal negative easement, we affirm the trial court's grant of summary disposition to the neighbor.

-1-

I. BACKGROUND

Plaintiffs reside in the Village of Grosse Pointe Shores in subdivisions known as Deeplands Subdivision One (Subdivision 1) and Deeplands Subdivision Two (Subdivision 2). In the early 1950s, the land now occupied by the two subdivisions and the land at issue in this appeal (the subject property)—a 7.83-acre parcel of land located at 55 South Deeplands Road—were owned by common owners. In 1953, the owners chose to divide their property and create the subdivisions, and in so doing, the owners subjected the subdivisions to specific deed restrictions outlined in two formal declarations. With respect to Subdivision 1, the declarations provide:

II A – Building Sites

1. <u>Definition and Minimum Sizes</u> – Nothing contained herein shall be construed as to prevent any owner of property from erecting a permitted type of residential building on a site consisting of one full platted lot, plus all or any fraction of adjacent lots in the Grantors, without reference to the platted lot lines other than to observe the building line requirements set forth in section III C hereof. The minimum size of building sites shall be, for each lot, the lot as shown on said plat except that in no case shall any site have smaller frontage on a street than one hundred (100) ft.

Subdivision 2 is subject to a similar, albeit more specific requirement:

II A – <u>Building Sites – Definition and Minimum Sizes</u>

Nothing contained herein shall be so construed as to prevent any owner of property from erecting a permitted type of residential building on a site consisting of one full platted lot, plus all or any fraction of adjacent lots in this subdivision and other adjacent subdivisions of the Grantor, without reference to the platted lot lines other than to observe the building line requirements set forth in Section III C hereof. The minimum size of building sites shall be, for each lot, the lot as shown on said plat except that in no case shall any site have smaller frontage on a street then as follows:

1) On South Deeplands Road – 100 ft.

2) On North Deeplands Road and on the west side of Ballantyne Road – 80 ft., providing 80 ft. sites become permissible under the Zoning Ordinance.

Not all of the original lots in Subdivision 2 have building frontage on South Deeplands Road, North Deeplands Road, or Ballantyne Road—for example, lots 88 and 89 front Deeplands Court.

As part of the declarations and in consideration for her retention of the 7.83-acre subject property, one of the original owners, Annette Stackpole, made specific commitments with respect to any future development that might occur on the subject property:

Annette S. Stackpole, one of the parties to these covenants and the sole owner of certain unplatted lands abutting South Deeplands Road to the south between Sheldon Road and Ballantyne Road, which lands are not included in the recorded plat referred to herein, does hereby, in consideration of valuable benefits to be derived from such mutual undertakings, agree to the following commitments regarding only the portion of said lands which directly abuts South Deeplands Road, namely:

Not to build on said portion or to sell all or any part thereof for building purposes unless the following restrictions be imposed, namely:

1) The front building line shall be no less than thirty-five (35) ft. from South Deeplands Road.

2) Side building lines shall be such that no dwelling may be built closer to the dwelling owner's side boundary lines than 10% of the average width of site on one side and 15% on the other side.

3) Minimum sizes of building sites and of dwellings shall conform to those stipulated herein for lots 25-44 inclusive, Deeplands Subdivision.

4) Architectural control will be provided for in no less restrictive form that [sic] set forth in Section III D hereof.

Defendant acknowledges that condition 3 means that all of the declarations for building sites in Subdivisions 1 and 2 apply to the subject property.

Following the death of Stackpole's heir, defendant purchased the subject property and planned to develop it by adding a street with a cul-de-sac and dividing the 7.83-acre parcel into 18 parcels for the construction of single-family residences. Plaintiffs filed this action seeking to halt defendant's development. Plaintiffs argued that defendant's proposed development plan violated the declarations and commitments applicable to the subdivisions and the subject property. Specifically, plaintiffs argued that the covenants prohibited defendant from building a new street on the subject property and prohibited defendant from dividing the property to create smaller properties that did not directly abut South Deeplands Road, which borders the subject property to the east. Plaintiffs argued that the subject property could not be divided in a way that would create parcels of land that did not abut and face South Deeplands Road. Plaintiffs also argued in the alternative that the doctrine of reciprocal negative easements precluded defendant from carrying out its development plan.

Defendant filed a motion for summary disposition, arguing that the language of the declarations and commitments did not restrict the development of the subject property in the manner argued by plaintiffs. Plaintiffs opposed the motion, arguing that summary disposition was premature because the parties had not conducted discovery. The trial court agreed with defendant that the covenants did not limit the development of the subject property as described by plaintiffs. Without addressing the doctrine of reciprocal negative easements or plaintiffs'

argument that summary disposition was premature, the trial court granted defendant's motion for summary disposition.

Plaintiffs appealed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(5), (C)(8), and (C)(10), but the trial court did not specify which rule formed the basis for its ruling. It is clear from the record, however, that the trial court did not grant summary disposition on the basis of (C)(5) (lack of legal capacity to sue), nor was it a ground for appeal.

When a motion seeks summary disposition under both (C)(8) and (C)(10), but the parties and trial court rely on matters outside of the pleadings, we review the matter through the lens of (C)(10). *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). This Court reviews de novo a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10). *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). " 'The interpretation of restrictive covenants is a question of law that this Court reviews de novo.' " *Eager v Peasley*, 322 Mich App 174, 179; 911 NW2d 470 (2017), quoting *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008).

### B. RESTRICTIVE COVENANTS

Plaintiffs first argue that the trial court erred because it so misinterpreted the language of the restrictive covenants that it effectively rewrote and restated them. Restrictive covenants involve two fundamental freedoms—the freedom to contract and the freedom to use property. In the context of restrictive covenants, a tension between the two can sometimes arise. The covenants are contracts pertaining to real property that Michigan courts perceive as having particular value: "Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property." *Eager*, 322 Mich App at 180. At the same time, by their very nature, restrictive covenants can also negatively impact the free use of property. *Id.*

Accordingly, courts must apply unambiguous restrictive covenants as-written "unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations." *Id.* "The general rule with regard to interpretation of restrictive covenants is that where no ambiguity is present, it is improper to enlarge or extend the meaning by judicial interpretation." *Webb v Smith (After Remand)*, 204 Mich App 564, 572; 516 NW2d 124 (1994), citing *Sampson v Kaufman*, 345 Mich 48, 50; 75 NW2d 64 (1956), *Brown v Hojnacki*, 270 Mich 557, 560; 259 NW 152 (1935), and *Borowski v Welch*, 117 Mich App 712, 716; 324 NW2d 144 (1982). "Restrictive covenants are construed strictly against those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property." *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 340; 591 NW2d 216 (1999), citing *Beverly Island Ass'n v Zinger*, 113 Mich App 322, 325; 317 NW2d 611 (1982). Our Supreme Court has referred to this latter principle as "fundamental," and it has noted that courts must not "infer restrictions that are

not expressly provided in the controlling documents." *O'Connor,* 459 Mich at 341, citing *Margolis v Wilson Oil Corp*, 342 Mich 600, 603; 70 NW2d 811 (1955).

Plaintiffs argue that the declarations and commitments condition the subject property in three fundamental ways: (1) they prohibit the building of a new street on the property; (2) they require that all future lots divided from the subject property have at least 100 feet of frontage on South Deeplands Road; and (3) they originally applied to property that abutted South Deeplands Road and, therefore, any future lots must continue to abut that road. On a close reading of the restrictive covenants, however, plaintiffs' assertions lack merit.

*New Street Prohibited on the Subject Property?* First, plaintiffs argue that new streets are prohibited on the subject property. Plaintiffs cannot, however, point to any express language to that effect in the declarations or commitments. Instead, plaintiffs base their assertion on what are purportedly necessary implications of the actual language. Specifically, plaintiffs contend that the 35-foot building requirement implies that all buildings on the subject property must face South Deeplands Road, and, similarly, because any new buildings must conform to the minimum size requirements of lots 25 through 44, and those latter lots face South Deeplands Road, any new buildings must also face that street.

Plaintiffs read more into the text than what is there. The 35-foot building requirement in Stockpole's commitments means that any building developed on the subject property must have a front building line at least 35 feet from South Deeplands Road. The commitment does not, however, require that the building lot actually abut South Deeplands Road; for example, the front building line could be on a lot that abuts a newly developed street, and as long as that front building line is also at least 35 feet from South Deeplands Road, the development would satisfy the plain meaning of the commitment. Similarly, the fact that lots 25 through 44 face South Deeplands Road has nothing to do with the fact that Stockpole committed the subject property to the same size requirements as those properties. The minimum size of lots and which way buildings on those lots must face are two distinctly different characteristics of property development, and we will not conflate the two. Had Stockpole intended to make commitments that any future development must have front building lines on lots that abut South Deeplands Road, the buildings must face South Deeplands Road, and no new street could be constructed on the subject property, she could have easily done so with language similar to that in this very sentence. We must give effect to the fact that she did not include this or similar language in her commitments.

*Must All Lots Have at Least 100 ft. of Frontage on South Deeplands Road?* Plaintiffs next argue that, regardless of whether the declarations and commitments specifically prohibit the construction of a street on the subject property, defendant's development plan necessarily violates the restrictive covenants because any future lot divided from the subject property must have minimum frontage of 100 feet on South Deeplands Road. According to plaintiffs' reading, this means that the subject property cannot be bisected by a new street because doing so would mean that some lots would have frontage on a street other than South Deeplands Road.

This reading is also a misreading. The 100-feet-minimum-frontage requirement is found in two separate parts of the declarations. The first part applies to Subdivision 1, and that condition merely states that a lot must not "have smaller frontage on a street than one hundred

(100) ft." Suffice it to say that there is nothing in this part to suggest that "*a* street" means only *the* street that plaintiffs suggest, i.e., South Deeplands Road. Rather, any new development must be on lots with minimum street frontage of 100 feet, regardless of the particular street.

The second part applies to Subdivision 2, and in that part, there is specific reference to "South Deeplands Road." Yet, there are also references to "North Deeplands Road" and "Ballantyne Road," and the minimum frontage for lots on those streets is only 80 feet. Moreover, the covenant refers to "a street" followed by specific requirements if a lot is built with frontage on South Deeplands Road, North Deeplands Road, or Ballantyne Road. Fairly read, this covenant does not mandate that any new development *must have* frontage on one of those streets; rather, *if* the new development has frontage on one of those streets, *then* the specified minimum size requirement would apply. This reading is consistent with the actual development of Subdivision 2, where lots 88 and 89, for example, front a different street altogether, Deeplands Court.

*Must Any Subdivided Lot Abut South Deeplands Road Because the Original Did?* Plaintiffs next argue that the language used in Stackpole's commitments, restricting future development of the subject property, explicitly applied only to the portion of her land "which directly abut[ted] South Deeplands Road." Plaintiffs suggest that, because *all* of Stackpole's property—the subject property as a whole—abutted South Deeplands Road, Stackpole necessarily committed that *all* of the property would always abut South Deeplands Road. This is, however, another strained reading of the text.

The commitment states that the "portion" of Stackpole's land directly abutting South Deeplands Road would be subject to certain building-frontage and lot-size requirements. The commitment says nothing that would suggest defendant could not divide the property, continue to maintain building-frontage and lot-size requirements for those parcels that continue to abut South Deeplands Road, and create new parcels that do not directly abut South Deeplands Road. Again, where express restrictive covenants exist, this Court will not infer restrictions not expressly provided in the controlling documents. *O'Connor*, 459 Mich at 341.

Finally, with respect to the declarations and commitments, plaintiffs broadly argue that a new street cannot be built on the subject property because Stackpole did not expressly reserve that right. In their words, "If Ms. Stackpole wanted to retain the right to allow new roads to be built on her remaining property in the future, she should have expressly stated that in her Commitments." This is not, however, how restrictive covenants generally work. Absent a specific covenant or reciprocal negative easement (see *infra*), the property owner retains the free, lawful use of her property. Put a slightly different way, the property owner need not expressly reserve the free, lawful use of her property—it is hers to enjoy unless and until she voluntarily restricts a particular use. See *O'Connor*, 459 Mich at 341.

Accordingly, plaintiffs' claim that the declarations and commitments prohibit construction of a new street on the subject property is without merit. With plaintiffs raising no questions on whether defendant's development plan complies with the actual, plainly interpreted restrictive covenants, the trial court properly granted summary disposition to defendant on this claim.

## C. RECIPROCAL NEGATIVE EASEMENTS

In the alternative, plaintiffs argue that summary disposition was improper in light of the doctrine of reciprocal negative easements and that the trial court erred in declining to address the claim. The trial court did not err by passing over the claim, as the doctrine is not applicable given the actual restrictive covenants in place here.

In general, the doctrine of reciprocal negative easements applies when a property owner subdivides her property, retains one of the subdivided lots, and places a restriction on the other lots, but somehow also evidences a "scheme or intent that the *entire tract* should be similarly treated." *Coblentz v Novi*, 475 Mich 558, 562-563 n 1; 719 NW2d 73 (2006) (emphasis added). If there is sufficient evidence that the plan of subdivision envisioned that the restriction would apply to all of the subdivided lots, even the one retained by the original owner, then the burden placed on the other subdivided lots "is by operation of law reciprocally placed" on the lot retained. *Id.* "In this way those who have purchased in reliance upon this particular restriction will be assured that the plan will be *completely* achieved." *Id.*

The doctrine of reciprocal negative easements does not apply, however, in cases involving universally applicable restrictive covenants. *Dwyer v Ann Arbor*, 79 Mich App 113, 118-119; 261 NW2d 231 (1977), rev'd in part on other grounds 402 Mich 915 (1978). The purpose of the doctrine is to "protect those who were expressly restricted in the use of their lots from uses by unrestricted lot owners that would adversely affect the character of the subdivision." *Id*. at 118. As noted earlier, defendant concedes that the covenants at issue here apply not only to Subdivisions 1 and 2, but also to the subject property originally retained by Stackpole. Rather, the dispute centers on the precise meaning and application of the relevant covenants. Therefore, the doctrine of reciprocal negative easements does not apply to the facts of this case.

## D. SUMMARY DISPOSITION BEFORE DISCOVERY

Finally, plaintiffs maintain on appeal that the trial court should not have granted summary disposition before the parties were permitted to pursue formal discovery. To show that summary disposition was premature, a party must "show that further discovery presents a fair likelihood of uncovering factual support for the party's position." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723-724; 909 NW2d 890 (2017). Plaintiffs fail to identify, however, a disputed factual issue for which additional discovery would actually be helpful. There is no question, for example, that Stackpole intended for the covenants applicable to Subdivisions 1 and 2 to apply to the subject property. The questions are, rather, what those covenants mean and how to apply them to defendant's proposed development plan, and the declarations, commitments, and development plan are all in the record. Plaintiffs have failed to identify any material factual issue for which additional discovery would provide needed insight. See *Eager*, 322 Mich App at 179. Thus, plaintiffs' contention that the trial court prematurely granted summary disposition fails.

## III. CONCLUSION

An owner can agree to restrict her lawful use of real property through a restrictive covenant or, if evidenced by a common scheme or intent, by imposition of a reciprocal negative easement. In doing so, the owner retains the freedom to use the property in all of the lawful ways not restricted.

Here, the original owner agreed to certain restrictive covenants on the subject property. A plain reading of those covenants does not include the prohibition of a new street or the requirement that any subdivided lot front or abut a particular street. Accordingly, defendant's plan of development does not run afoul of the applicable restrictive covenants, and there is no basis for imposing a reciprocal negative easement. For the reasons stated above, we affirm summary disposition in favor of defendant. Having prevailed in full, defendant is entitled to tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Michael F. Gadola
/s/ Mark T. Boonstra