Madkour v. Zoltak, No. 114-3-04 Bncv  (Carroll, J., Aug. 3, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**BENNINGTON COUNTY, ss.**

| | |
|---|---|
| **ABRAHAM J. MADKOUR, BRENDA** | ) |
| **MADKOUR, LESTER E. MOODY,** | ) |
| **VIRGINIA D. MOODY, JERRY D.** | ) |
| **GOFF, BETTY-JEAN GOFF, RALPH B.** | ) |
| **WELSH, JR. and CAROL B. WELSH,** | ) |
| **as Trustees of the CAROL B. WELSH** | ) |
| **LIVING TRUST,** | ) |
| **Plaintiffs,** | ) |
| v. | ) **BENNINGTON SUPERIOR COURT** |
| | ) **DOCKET NO. 114-3-04 Bncv** |
| **JOHN ZOLTAK and MARGARET** | ) |
| **ZOLTAK,** | ) |
| **Defendants.** | ) |
| | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants John and Margaret Zoltak move the Court for summary judgment on all of Plaintiffs' claims.  Plaintiffs answer Defendants' motion and submit a cross-motion for summary judgment.  For the reasons herein, Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' cross-motion for summary judgment is thereby **DENIED**.

**STANDARD ON SUMMARY JUDGMENT**

Summary Judgment under V.R.C.P. 56 is appropriate when there is "no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56

1

(c) (3).  When reviewing a motion for summary judgment, the court will afford the non-moving party "all reasonable doubts and inferences" based upon the facts presented.  Samplid Enterprises, Inc. v. First Vermont Bank, 165 Vt. 22, 25 (1996) (citing Pierce v. Riggs, 149 Vt. 136, 139 (1987)).  In the event that the non-moving party opposes the moving party's motion, "[a]llegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

## BACKGROUND

Plaintiffs seek declaratory and injunctive relief to determine and enforce purported restrictive covenants on lands derived from the former Ames Farm in Manchester, Vermont. Defendants are planning, and have obtained approval from the town of Manchester for, a residential subdivision located on a portion of the Ames Farm conveyed to them by the common grantor, Yetta Isaacs, who acquired the land at her husband's death.  Plaintiffs contend that the land owned by Defendants is subject to restrictive covenants that would prohibit the development from going forward as planned.

Defendants' property, as well as the property owned by Plaintiffs, was originally part of what was known as the Ames Farm.  The entire Ames Farm, comprised of ninety acres, was owned by Yetta Isaacs.  Isadore Isaacs, Yetta Isaacs' husband, conveyed the Ames Farm land to her at his death in 1955 by Decree of Distribution, recorded in the Manchester Land Records at Book 50, Page 521.  (See Pl.'s Compl., at Ex. 1.)  Beginning in 1964, Yetta Isaacs proceeded to convey all the lands comprising the Ames Farm by way of eight separate deeds over a period of thirty-five years, the last conveyance occurring in 1999.  The eight deeds used to convey the

2

subdivided portions of the Ames Farm lands contain varying restrictive covenants governing the use and character of the land. No plat nor development plan was recorded prior to Isaacs' conveyances. Plaintiffs contend, under several theories, that the restrictive covenants found in the various deeds restrict the use of Defendants' property.

The first deed executed by Isaacs conveyed a parcel of the Ames Farm in 1964 to Jean Viebrock and Phyllis Binkley ("Viebrock/Binkley"), and is recorded in the Manchester Land Records at Book 56, Page 91. The deed contains the following covenants:

> That the same shall be used for private residential purposes only, that no more than one single family dwelling with other structures appurtenant or accessory thereto shall be placed or maintained thereon at one time, and that at no time will the Grantees and their heirs and assigns, suffer or permit any trade, business, or manufacture to be carried on thereon, nor shall any house trailer or mobile home, or any dwelling of the type commonly referred to as an "A-Frame" be constructed or placed thereon.

> The lot of land herein conveyed shall not be subdivided, or sold or leased in parts smaller than the whole . . .

> The Grantor, covenants and agrees that she will not sell or convey any of the lands presently owned by her located in the same meadow as the lands herein described easterly of a line located 400 feet westerly from and parallel with the west line of the lands herein described, or located in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced, without imposing thereon the same or similar restrictions and covenants as set forth herein.

(See id. at Ex. 2.)

The second and third conveyances made by Isaacs occurred March 27, 1979, to Barbara Haviland. Those deeds are recorded in the Manchester Land Records at Book 79, Pages 208 and Pages 211 respectively. The deeds conveying those parcels contain similar covenants restricting commercial use, subdivision, and multi-family dwellings only on the parcels conveyed. However, the second and third deeds to Barbara Haviland also contain the following limitation:

3

"The above restrictions shall expire twenty years from the date hereof, but may be renewed for an additional term of fifteen years by a two thirds vote of all land owners derived from the "Ames Farm," so called, conveyed by Joseph A. Payette to Isadore Isaacs (dec.) by deed dated June 5, 1944, recorded in Book 42 of the Manchester Land Records at Page 504."   The second and third deeds also contain the following provision: "Grantor agrees not to convey any remaining lands being a part of said Ames Farm, without imposing the same or similar restrictions."   (See id. at Ex. 3, 4.)

The fourth conveyance occurred on July 20, 1979, to Richard J. Kittredge and Clarence J. Haviland, and is recorded in the Manchester Land Records at Book 80, Page 98.  This deed contains the same language used in the second and third deeds, including the time limitation for the restrictions as well as Isaacs' promise to similarly burden the remaining Ames Farm lands. (See id. at Ex. 5.)

The fifth conveyance was made on March 20, 1984 to Green Mountain Mercantile, recorded in the Manchester Land Records at Book 94, Page 190, and contains the following covenant language: "The conveyance is subject to covenants, easements and restrictions of record, if any. . . . The herein conveyed premises are not subject to covenants included in deeds of conveyance to other purchasers of parcels of the so-called "Ames Farm" property.  The herein conveyed parcel is zoned for industrial use, and is not subject to any such residential covenants." (See id. at Ex. 6.)

The sixth conveyance was made on July 2, 1991, to Abraham and Brenda Madkour.  The deed is recorded in the Manchester Land Records at Book 137, Page 119.  The deed contains language which varies from previous deeds, including a provision that the conveyed land "be

4

merged with Grantee's land which lies northerly of and contiguous to the within conveyed parcel, and shall not be conveyed separately therefrom." Moreover, indicative of the unique character of the restrictions in the sixth conveyance, the deed restricts the construction on the parcel of "buildings or structures of any nature, whether temporary or permanent" but allowed that "the construction of a tennis court, barn, garage, or other similar outbuilding to be used in connection with the Grantee's residence adjoining the within conveyed parcel, shall not be deemed to be a violation of this covenant." The deed language restricts "offensive or unsightly conditions . . . swine, cattle, sheep, goats, fowl . . . junk vehicles or equipment," but allows the keeping of horses. Finally, the deed contains a provision that the restrictions shall expire in ninety-nine years from the date of conveyance. (See id. at Ex. 7.)

The seventh conveyance was a guardian's deed, executed by Charles Eichel on June 9, 1995, to Manchester Health Services. The deed is recorded in the Manchester Land Records at Book 157, Page 209. The deed conveying the parcel does not contain any restrictions whatsoever. However, Plaintiffs assert that the deed is subject to the same restrictions found in the first conveyance from Isaacs to Viebrock/Binkley, and that Yetta Isaacs breached her promise not to convey land of the Ames Farm without imposing similar restrictions to those in the Viebrock/Binkley deed. (See id. at Ex. 8.)

The final conveyance was made on January 13, 1999, to John and Margaret Zoltak, and is recorded in the Manchester Land Records at Book 177, Page 135. The deed contains the following language: "This conveyance is made subject to all covenants, easements, utility easements and restrictions of record." (See id. at Ex. 9.)

As the descriptions above indicate, the common grantor Isaacs clearly contemplated some

5

controlled use of the Ames Farm property. The parties strongly dispute whether the restrictions in the Viebrock/Binkley deed extend to the Zoltaks' land; whether the Declaration of Renewal of Covenants executed by Plaintiffs and others is valid and enforceable as to all property derived from the former Ames Farm; and whether Isaacs' various conveyances of the Ames Farm lands evidence an intent to create a common scheme or plan of development such that equitable servitudes should be found by implication on all of the Ames Farm property.

## DISCUSSION

Plaintiffs' complaint seeks a declaratory judgment under V.R.C.P. 57 and 12 V.S.A. §§ 4711-4725, that restrictive covenants found in various deeds from the common grantor Isaacs burden lands owned by Defendants. Defendants seek summary judgment, arguing in their motion that the restrictive covenants Plaintiffs seek to impose do not apply to their property. In their opposition and cross-motion in response to Defendants' summary judgment motion, Plaintiffs ask the Court to declare that restrictive covenants found in various deeds from the common grantor Isaacs burden Defendants' lands. Plaintiffs' complaint seeks a declaratory judgment under V.R.C.P. 57 and 12 V.S.A. §§ 4711-4725, that restrictive covenants found in various deeds from the common grantor Isaacs burden lands owned by Defendants. Defendants seek summary judgment, arguing in their motion that the restrictive covenants Plaintiffs seek to impose do not apply to their property. In their opposition and cross-motion in response to Defendants' summary judgment motion, Plaintiffs ask the Court to declare that restrictive covenants found in various deeds from the common grantor Isaacs burden Defendants' lands.

**The 1964 Viebrock/Binkley Deed**

Plaintiffs assert that the plain language of the Viebrock/Binkley deed burdens lands presently owned by Defendants, and for which they have obtained approval for development from the town of Manchester. Defendants contend that the Viebrock/Binkley conveyance only burdens well-defined lands in the northwesterly portion of the former Ames Farm property, which now constitute the residential area at the northerly end of Landmark Lane in Manchester, Vermont.

The parties present competing affidavits with respect to what precisely the land description in the Viebrock/Binkley deed encompasses. As noted, the Viebrock/Binkley deed described the land apart from the conveyance that was intended to be burdened as follows:

> The Grantor, covenants and agrees that she will not sell or convey any of the lands presently owned by her located in the same meadow as the lands herein described easterly of a line located 400 feet westerly from and parallel with the west line of the lands herein described, or located in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced, without imposing thereon the same or similar restrictions and covenants as set forth herein.

In support of their construction, Plaintiffs submit the affidavit of Plaintiff Abraham Madkour, who states that he has lived at his Landmark Lane address since 1970. (Madkour Aff., at ¶ 1.) Madkour states that he resided in Manchester beginning in 1961, and has personal knowledge of the Ames Farm lands, prior to the first conveyance to Viebrock/Binkley. (Id. at ¶ 1, 18.) Madkour states that at the time of the Viebrock/Binkley conveyance, a fence surrounded the entire Ames Farm property, excluding the two parcels occupied by Manchester Mercantile and Manchester Health Services. (Id. at ¶ 6-7, Ex. 4.) Madkour further states that another fence ran in a south-easterly direction, bisecting the Ames Farm to form northerly and southerly fenced portions. (Id.) Madkour states that the circumferential fence, and the bisecting fence are the

7

only fences he believes were present on the entire Ames Farm at the time of the Viebrock/Binkley deed. (Id. at ¶ 8.)

Madkour and Plaintiffs argue that based on Madkour's recollection of the fence configuration at the Ames Farm, the Viebrock/Binkley deed burdens all of the land "in between the fences in 1964 as demonstrated on Exhibit [to the Affidavit] 4." (Id. at ¶ 9.) Plaintiffs' construction of the deed is such that the Viebrock/Binkley deed burdens the entire Ames Farm property, excluding the parcels now occupied by Manchester Health Services and Manchester Mercantile.

Defendants submit the affidavit of Ellis Speath, a licensed land surveyor, asserting a different construction. (See Speath Aff.) Speath states in his affidavit that he is a licensed engineer and surveyor in the State of Vermont. (Id. at ¶ 2.) Speath states that he plotted the boundary lines recited in the Viebrock/Binkley conveyance and transferred the lines to the most recent tax map of the former Ames Farm lands. (Id. at ¶ 7.) Speath determined that the burdened lands in the Viebrock/Binkley deed do not include Defendants' lands approved for development, which are located along the southerly border of the former Ames Farm lands, bordering Barnumville Road. (Id.) Rather, the additional lands burdened in the Viebrock/Binkley deed are the lands to the north of both the restricted area (which lies to the west of the Viebrock/Binkley parcel) and the parcel conveyed to Viebrock/Binkley. According to Speath's construction, the lands burdened by the Viebrock/Binkley deed are the lands that constitute the residential neighborhood at the northern end of Landmark Lane.

The most grammatically difficult portion of the deed's description is the restriction of lands "located in the meadow adjoining the meadow in which said lands are located on the north,

8

as presently fenced." Plaintiffs assert that the "meadow in which said lands are located on the north" refers to the meadow in which the Viebrock/Binkley parcel, as well as the restricted area are located, and which lie north of the meadow where the additionally restricted lands lie. In other words, "located on the north" refers to the "meadow in which said lands [the lands conveyed] are located," and thus the additionally restricted lands lie south of the Viebrock/Binkley parcel.

Conversely, Defendants argue that the deed is unambiguous and that "located on the north" refers to the meadow adjacent to the meadow in which the "said lands" are located. In other words, the lands that currently comprise the residential development at the northerly end of Landmark Lane, and which lie north of the Viebrock/Binkley parcel (currently the Madkour property), are the lands burdened by the Viebrock/Binkley deed. In support of their construction, Defendants point out that the development lying to the north of the Viebrock/Binkley parcel strictly complies with the terms of the restrictive covenants found in the Viebrock/Binkley deed. Defendants argue that this fact confirms their construction of the Viebrock/Binkley deed.

Defendants also point to the fact that in the Viebrock/Binkley conveyance, Isaacs restricted certain well defined lands, and did not explicitly burden all of the lands of the Ames Farm. In further support Defendants also note that in later deeds Isaacs promised to similarly burden "any remaining lands being a part of said Ames Farm." (Pl.'s Compl., at Ex. 3, 4.) Defendants argue that given Isaacs' very specific descriptions in the Viebrock/Binkley deed, and in light of her promise to similarly burden remaining Ames Farm lands contained in deeds subsequent to the Viebrock/Binkley conveyance, the deed language itself blunts Plaintiffs' argument that the Viebrock/Binkley deed burdens the entire Ames Farm.

9

Plaintiff Madkour refers in his affidavit to an appraisal of the lands acquired by Defendants performed by Bredice Appraisal Associates, Inc. on July 19, 1998. (See Madkour Aff., at Ex. 5.) Madkour states in his affidavit that Defendants took their property with the knowledge that the property was burdened with restrictive covenants, pointing to the appraisal's discussion of potentially applicable restrictions. (See id. at ¶ 14; Ex. 5.) Upon review of the Bredice appraisal, it is clear that the drafters concluded that Defendants' land might be subject to the covenants contained in the Haviland and Kittredge/Haviland deeds, which were the second, third and fourth conveyances by Isaacs, but made no mention of possible applicable restrictions stemming from the Viebrock/Binkley deed.[1]

The appraisal contains an addendum, referred to in the report, which is an opinion letter dated June 15, 1998, from the law office of Whalen and Nawrath. In the letter, attorney Marilyn Hand notes that the "1964 conveyance to Viebrock/Binkley clearly restricts the covenants to lands of Yetta Isaacs in the vicinity of Landmark Lane." (Id. at Ex. 5.) Landmark Lane runs north to south along the eastern border of the Ames Farm property. Hand goes on to suggest that "it could be argued by the seven owners on Landmark Lane that the residential restrictions

---

[1]It should be noted that in both the appraisal report and in Attorney Hand's opinion letter, the operative date for termination of the restrictions contained in the deeds subsequent to the Viebrock/Binkley deed, is the July 20, 1979 date of recordation of the fourth deed to Kittredge/Haviland. It is not clear to the Court why this oversight occurred. It is certain, however, that the second deed, of March 27, 1979, is the first deed in which the time limitation appears. (See Madkour Aff., at Ex. 5; Pl.'s Compl., at Ex.4.)

contained in their deeds apply to the Isaacs land fronting on Route 7." (Id.)

The appraisal and its addenda relied upon by Plaintiffs make clear that the appraisers, as well as Attorney Hand, hold the belief that the restrictions contained in the deeds subsequent to the Viebrock/Binkley deed, and which contain the twenty year duration, are the restrictions that potentially apply to Defendants' property, and not the restrictions contained in the Viebrock/Binkley deed.

Plaintiffs argue that material facts remain in dispute regarding the construction of the Viebrock/Binkley deed that should preclude summary judgment on that issue. Plaintiffs argue that the language in the Viebrock/Binkley deed referring to the burdened lands "as presently fenced" is in dispute: that is, Plaintiffs argue that Madkour recalls one fence scheme on the relevant property while Speath's affidavit does not address the location of the fence referred to in the deed. Plaintiffs argue this creates a dispute as to a material fact because the location of the fences at the time of Viebrock/Binkley conveyance is critical to the deed's proper construction. The Court concludes, however, that the dispute regarding the fence referred to in the Viebrock/Binkley deed is not material. The deed itself is unambiguous to the extent that the additional lands intended to be burdened lie to the north of the Viebrock/Binkley parcel, which lies north of the Defendants' proposed development, and more importantly that the deed did not burden the entire Ames Farm.

While the fences referenced in the deed may have long since been removed and are thus imperfect references in a modern dispute, the deed is otherwise clear and unambiguous. Moreover, the presence of a conforming residential area in the lands to the north of the Viebrock/Binkley parcel supports this construction. The deed's use of language that carefully

11

delineates portions of the Ames Farm burdened by the Viebrock/Binkley conveyance also undermines Plaintiffs' argument that the deed burdened the entire Ames Farm. This is particularly true where the second, third and fourth deeds contain an express promise from Isaacs to similarly burden the remaining Ames Farm lands. Indeed, if the Court accepts Plaintiffs' construction that the Viebrock/Binkley deed burdens all lands of the Ames Farm, then the promissory language in the subsequent deeds providing that the grantor will similarly burden remaining Ames Farm lands is rendered redundant if not nonsensical.

In sum, the Viebrock/Binkley deed is not ambiguous as a matter of law with respect to the additional lands that were burdened apart from the conveyance to Viebrock/Binkley. Therefore, judgment as a matter of law is appropriate on the issue of whether the Viebrock/Binkley deed burdened the entire Ames Farm. The Court concludes that it did not, but rather that the deed burdened only those lands constituting the Viebrock/Binkley conveyance and the lands to the north that presently make up the residential neighborhood at the northerly end of Landmark Lane. Defendants' Motion for Summary Judgment is granted as to this issue.

**The Covenants' Twenty Year Limitation in the Second, Third and Fourth Deeds and Plaintiffs' Declaration of Renewal**

Plaintiffs argue that even if the restrictions found in deeds subsequent to the Viebrock/Binkley deed expired by their terms, Defendants' property is burdened in "perpetuity" by the Viebrock/Binkley deed. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. Dated November 1, 2004 and Pl.'s Cross Mot. for Summ. J., at 16.) In this regard, it is Plaintiffs' position that the perpetual restrictions contained in the Viebrock/Binkley deed take precedence over the time-limited restrictions in the subsequent deeds.

Even were the Court to accept Plaintiffs' position that the Viebrock/Binkley deed burdened the entire Ames Farm, such a construction could not overcome the fact that as between two deeds containing the same or similar restrictions, conveyed by a common grantor, the deed containing an express time limitation will control. See Gardner v. Maffitt, 74 S.W.2d 604 (Mo. 1934) (where filed plat does not contain time limitation but deeds conveying platted property do contain limitations, limitations control); see also id. (where language of covenants uses terms of restriction such as "ever" or "at any time" time limitation will apply to restrictions even if restrictions are modified by words of unlimited duration); Edwards v. Southhampton Extension Civic Club, 540 S.W.2d 535 (Tex. Civ. App. 1976, writ ref'd n.r.e.) (holding that where deeds provided for one extension of restriction time period, restrictions expired after single renewal despite language in deed providing that certain activities and uses would never be permitted); see also generally Glenmore Distilleries Co. v. Fiorella, 117 S.W.2d 173, 176 (Ky. 1938) (citing Dick v. Goldberg, 128 N.E. 723 (Ill. 1920)) (reasonable and substantial doubts regarding the duration of a restrictive covenant must be resolved in favor of a limited duration and against a perpetual duration).

As the relevant case law makes clear in a number of discrete situations, courts of other jurisdictions have expressed their preference for temporal certainty over restrictions with a perpetual duration when such limitations have been expressed. The holdings of these cases are also consistent with Vermont law in the sense that doubts concerning the extent of restrictive covenants must be resolved "in favor of the free use of land." Fassler v. Okemo Mountain, Inc., 148 Vt. 538, 542 (1987) (quoting Latchis v. John, 117 Vt. 110, 113 (1952)).

The scheme of restrictive covenants found in the second, third and fourth conveyances, as

well as Isaacs' inclusion of a promise not to convey remaining lands of the Ames Farm without imposing similar restrictions, demonstrate an intent on the part of the grantor to create equitable servitudes on the remaining property of the Ames Farm. However, the deeds are equally clear in expressing an intent to limit the duration of the restrictions, and further to provide a mechanism for their renewal. Because the restrictions terminated prior to renewal by their terms, they are presently inoperative and could not be revived after their expiration. See, e.g., Sampson v. Kaufman, 75 N.W.2d 64, 66 (Mich. 1956) (failure by burdened and benefitted homeowners to renew restrictive covenants prior to termination date rendered restrictions "inoperative"); Restatement (Third) of Prop.: Servitudes § 7.2 (2005) (providing that "a servitude terminates when it expires by its terms"). Nevertheless, Plaintiffs press their assertion that their Declaration of Renewal, recorded in the Manchester land records on July 19, 1999, effectively renewed the restrictions. (See Pl.'s Compl., at Ex. 14.) The Court cannot agree with Plaintiffs' position.

First, it is undisputed that the duration for the restrictions is first found in the second deed of conveyance from Isaacs to Barbara Haviland, dated March 27, 1979.[2] The twenty year time limit for the restrictions commenced at that point, on March 27, 1979, ending on March 27, 1999. With no legal support, Plaintiffs assert that the fourth conveyance to Kittredge/Haviland, dated July 20, 1979 and containing identical restriction and duration language to the second conveyance to Barbara Haviland, controls the commencement of the twenty year time period. (See Pl.'s Opp'n to Def.'s Mot. for Summ. J. Dated November 1, 2004 and Pl.'s Cross Mot. for Summ. J., at 15-16.) Plaintiffs do not address why the Court should disregard the time limitation

---

[2]Both parties have stipulated to the validity of the various deeds at issue in this case.

found in the March 27, 1979 deed from Isaacs to Haviland.

Rather, Plaintiffs note that Defendants' contention that the restrictions expired by their terms pursuant to the March 27, 1979 Haviland deed "is irrelevant in determining whether the restrictions set in place by Isaacs burden Defendants' property." (Id. at 16.)  The Court cannot agree.  Plaintiffs ask the Court to disregard the March 27, 1979 deed, and in effect pretend that the subsequent deeds containing the time limitation control.  Given the grantor's clearly expressed intent in the March 27, 1979 deed, the Court cannot simply disregard the operative effect of that deed and its restrictions.  See Fassler, 148 Vt. at 542 (quoting Latchis, 117 Vt. at 113)  ("'restrictions will not be extended by implication to include anything not clearly expressed'")

Moreover, as Defendants point out, Plaintiffs' construction as to the time limitations in the deeds would entirely alter the clear intent of the grantor Isaacs.  For example, were the Court to agree with Plaintiffs, a hypothetical conveyance from Isaacs to another grantee in 1998, prior to the expiration of the twenty year period beginning March 27, 1979, and containing the same time limitation, would push the expiration date back another twenty years from the date of any later conveyance, turning a twenty year limitation into one of potentially infinite duration, and would retroactively impose restrictions on earlier grantees in excess of what those grantees anticipated.[3]  See Sampson, 75 N.W.2d at 66 (quoting Sanborn v. McLean, 206 N.W. 496, 497

_____

[3]For example, an individual who took a deed containing the twenty-year duration from Isaacs in 1979, with the expectation that the land would be freed from the restrictions at a date certain absent an effective renewal, would be in jeopardy of restrictions far beyond what the

(Mich. 1925)) ("'Reciprocal negative easements are never retroactive; the very nature of their origin forbids.'"). Here, to adopt Plaintiffs' construction of the duration for the restrictions would be to burden the land for a longer period than was intended, potentially in perpetuity, and would serve to impermissibly impose those restrictions retroactively.

Because Plaintiffs did not record a Declaration of Renewal until July of 1999, the restrictions expired prior to the purported renewal, and were thus inoperable after expiration on March 27, 1999. See Anderson v. Lake Arrowhead Civic Ass'n Inc., 483 S.E.2d 209, 212 (Va. 1997) (holding that failure to record renewal prior to expiration of covenants was "fatal" to any attempt to effect renewal following expiration of time limitation for covenants); Sampson, 75 N.W.2d at 66 (failure by burdened and benefitted homeowners to renew restrictive covenants prior to termination date rendered restrictions "inoperative"); see also Restatement (Third) of Prop.: Servitudes § 7.2 (2005) (providing that "a servitude terminates when it expires by its terms").

In their assertion that their Declaration of Renewal is valid and binding on Defendants' land, Plaintiffs also argue that "restrictions may be imposed or created by agreement among existing property owners, and that all property owners in a general-plan development are implied beneficiaries of the servitudes with enforcement rights." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. Dated November 1, 2004 and Pl.'s Cross Mot. for Summ. J., at 15-16.) Plaintiffs essentially argue that it makes no difference whether the original restrictions expired because a common scheme of development exists, which in turn would make any subsequent agreement among owners of land derived from that common grantor enforceable against all owners of land from

grantee originally bargained for.

that common grantor.

Even assuming that Isaacs created a common scheme of development, after the covenants in the second, third and fourth conveyances expired on March 27, 1999, the existence of a common scheme of development has no bearing on the applicability of restrictions that expired by their terms. See Sampson, 75 N.W.2d at 67 (holding that "general plan doctrine" did not apply beyond point at which "definite restriction" expired by its terms); id. (a subsequent agreement among lot owners to extend restrictions, four years after restrictive covenants expired, "could not be an agreement between those who signed same and defendants, who did not or refused to sign); Stanton v. Gulf Oil Corp., 101 S.E.2d 250, 252 (S.C. 1957) (holding that when restrictive covenants found in individual deeds expired after twenty-one years by their terms, there existed no mutuality of covenant among lot owners thereafter, which precluded enforcement of covenants among lot owners). Therefore, the Declaration of Renewal executed by Plaintiffs is an agreement only among those a party to it.

Defendants acquired the parcel they seek to develop in January of 1999. This conveyance occurred prior to the expiration of the restrictions contained in the second, third and fourth conveyances. At the time Defendants acquired their parcel, it would have been possible to argue that the restrictions in the second, third and fourth deeds from Yetta Isaacs burdened their property by implication under the theory that Isaacs created a common plan of development. Following the expiration of the restrictions in March of 1999, however, a purported renewal of terminated restrictions could not bind Defendants without their participation. Defendants were not party to the Declaration of Renewal and the covenants purportedly renewed do not apply to their property.

17

**Common Scheme or Plan of Development**

Extensive analysis as to whether Yetta Isaacs created a common scheme or plan of development, such that all lands of the Ames Farm were burdened with equitable servitudes, is obviated by the expiration of those restrictions discussed above. Even were the Court to determine as a matter of law that Yetta Isaacs created a common scheme or plan of development with restrictive covenants that ran with the land, such restrictions terminated by their terms at the end of the twenty year period she imposed.

## CONCLUSION

It is clear to the Court that Yetta Isaacs and her original grantees contemplated some restrictions on the use and development of the former Ames Farm Lands. Although the Court declines to make a determination as a matter of law whether Isaacs successfully created a common scheme of development such that equitable servitudes impliedly burden and benefit the entire Ames Farm property, such a determination is unnecessary on these facts. The clear intent of the grantor Isaacs, expressed in the second, third and fourth conveyances of the Ames Farm, was to impose a definite limitation as to the duration of the restrictions. The Court must honor this intent.

It is well established, and the overarching rule of deed construction, that the Court must give effect to the intentions expressed by the grantor. Creed v. Clogston, 176 Vt. 436, 441 (2004). The intent of the grantor here similarly controls, and the Court cannot ignore the fact that the restrictions imposed by Yetta Isaacs expired and became inoperative prior to the Plaintiffs' attempted renewal of those restrictions. Therefore, judgment as a matter of law for

18

Defendants is appropriate as no material facts are in dispute and no triable issues remain, and the Court determines as a matter of law that the restrictions contained in the various deeds from Isaacs expired by their terms and are no longer applicable to Defendants' lands.

## **ORDER**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Cross-Motion for Summary Judgment is **DENIED**.

Dated this _____ day of August, 2005, at Bennington, County of Bennington, Vermont.

_____
Karen R. Carroll
Presiding Judge